Benson v. The State.

No. 14,959.

## BENSON v. THE STATE.

CRIMINAL LAW.—*New Trial.—Error in Admitting Evidence.*—A cause assigned as a reason for a new trial, that the court erred " in permitting evidence to be given to the jury which was incompetent," is too indefinite to present any question on appeal.

SAME.—*Confession under Inducement.—Evidence.*—Where an officer visits in prison one accused of murder, and says to him, " There is only one way out of this, and that is, tell the truth," whereupon the accused confesses the killing, the officer's remark is merely an inducement, and not a threat, and under section 1802, R. S. 1881, the confession, with all the circumstances, may be given in evidence.

SAME.—*Murder.—Motive.—Evidence of Assault upon Other Person.*—Upon the trial of one accused of murder, evidence of an assault, and its character, upon the wife of the deceased, following closely after the killing of the husband, is competent as tending to show the motive which led to the crime, where the theory of the prosecution is that the accused supposed the husband and wife were obstacles in the way of his marriage with a girl residing with them.

SAME.—*Unsoundness of Mind.—Evidence of Motive Consistent with Sanity.*— Where one charged with murder introduces evidence to prove that he was of unsound mind when the crime was committed, any evidence on the part of the State tending to show a motive for the killing, consistent with reason and soundness of mind, is competent, and the fact that it was permitted to be introduced in chief instead of in rebuttal is not available error.

SAME.—*Instructions.—Time of Asking.*—An instruction asked after the argument has closed comes too late, and it is not error to refuse to give it.

Benson *v.* The State.

SAME.—*Refusal of Duplicate Instruction.*—Where the court gives an instruction covering a given subject, it is not error to refuse to give another instruction asked by a party upon that subject.

From the Clark Circuit Court.

*J. B. Meriwether* and *L. A. Douglass*, for appellant.

*L. T. Michener*, Attorney General, and *J. H. Gillett*, for the State.

BERKSHIRE, J.—The appellant was indicted for the crime of murder, in the first degree, in the Floyd Circuit Court, the particular crime charged being the murder of Jacob Mott-weiler.

On appellant's motion there was a change of venue granted to the Clark Circuit Court, where the case was tried and the appellant convicted of the crime charged and sentenced to be hanged.

The errors assigned are: 1. The court erred in overruling the motion to quash the indictment. 2. The court erred in overruling the motion for a new trial.

We can discover no valid objection to the indictment; it contains all of the usual and necessary averments ordinarily found in an indictment for murder in the first degree.

The motion for a new trial contains four reasons: 1. Error of law occurring at the trial in permitting evidence to be given to the jury which was incompetent. 2. Error committed in the instructions given to the jury. 3. Error committed in the refusal to give instructions asked for by the appellant. 4. Because the verdict of the jury is contrary to law and to the evidence.

The first error assigned is too indefinite to present to this court any ruling of the court below overruling objections to the admission of evidence. The court's attention should have been called to the particular evidence objected to in the motion for a new trial. *Miller* v. *Lebanon Lodge*, 88 Ind. 286; *State, ex rel.*, v. *Riggs*, 92 Ind. 336; *Ireland* v. *Emmerson*, 93 Ind. 1; *Wallace* v. *Kirtley*, 98 Ind. 485; *Louisville,*

*etc., R. W. Co.* v. *Thompson,* 107 Ind. 442 ; *Stout* v. *State,* 90 Ind. 1.

The last case cited was a conviction for murder in the first degree, and the reasons assigned were very similar to the first reason embraced in the motion under consideration.   But in view of the importance of the case we will consider the rulings of the court to which objection is made in appellant's brief.

The State was allowed to prove on the trial certain confessions made by the appellant, over his objection.

The following section of the statute, R. S. 1881, section 1802, controls the admission and weight of this class of evidence :  " The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear, produced by threats ; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony."

There is no evidence of any threats to force confession from the appellant.   The most that was said to him was by Smithwick, a policeman, at the county jail.   He testifies : " I saw Benson at the jail, in New Albany, the day after the killing, about 10 A. M.; officer Cannan was with me ; I got a key and went in ; Benson was at the upper end of the corridor of the jail ; he said he did not kill Mottweiler ; he had told Sallie Snyder what he had done, and they then went to Gresham's ; afterwards Mr. and Mrs. Mottweiler were found ; said he didn't know who hurt them ; said he saw Uncle Jake lying dead, and saw a man's legs in underbrush.   I said : ' Benson, there is only one way out of this, and that is, tell the truth.' "   After this remark by Smithwick, the appellant confessed the killing.   The remark of Smithwick was an inducement, but not a threat.   The confessions and inducements were all before the jury, as provided in the section of the statute to which we have called attention.

Ellen Mottweiler testified as follows :   " I am the widow

of Jacob Mottweiler, deceased; he was killed December 9th, 1888; Benson said that he and Sallie Snyder were going to get married; the Monday before December 9th, 1888, he said it; on November 5th, 1888, Benson said to my husband, ' Uncle Jake, I won't go to the election to-morrow unless you make me the promise you agreed to;' when Benson said he and Sallie were to be married, I said, ' don't worry my husband about it, you can get married if you want to;' then he said he had a good home for Sallie; I had no other conversation with him about marrying Sallie; on December 9th, 1888, Benson went out to hunt; he and Mottweiler were on good terms that day, talking and laughing; Benson was out in the morning, called Mottweiler out; stayed a short time and they came back laughing; Mottweiler did not notice Benson take the gun; when he went out in the afternoon Benson took the gun; I went out to milk about half past 4 o'clock; I was hurt, and did not know anything for seven weeks; I did not know that my husband was dead for more than seven weeks after his death." (Here the prosecuting attorney asked Mrs. Mottweiler to describe the nature and extent of her wounds, and exhibit them on her person.)

The appellant objected to the witness testifying in answer to the question, but the court overruled the objection, and the witness testified as follows : " I was milking when I was knocked down. I don't know by what or by whom. I did not remember anything until long after December 24th, 1888, the day before Christmas. I then found wounds on my head and on my temple, one behind my ear, and my jaw-bone broken. I have not recovered from them, as you see."

The theory of the State in the prosecution was, that the appellant was over-anxious to marry Sallie Snyder, a young lady who resided with the deceased and his wife, and that she had refused him, placing her refusal upon the ground that she would not enter into the marriage relation so long as they were living, and that the motive which led to the

crime was to remove the obstacle which he imagined stood in the way of his marriage with the young lady named.

Upon this theory, any evidence having a tendency to prove the assault, and its character, upon Mrs. Mottweiler, following shortly the killing of her husband, was competent. But for another reason the evidence was competent, though probably more properly admissible in rebuttal, but, if so, its admission at an improper time was not an available error. The appellant introduced evidence with a view to proving that he was a person of unsound mind when the crime was committed. To meet this class of evidence any evidence tending to show a motive or purpose for the killing, consistent with reason and soundness of mind, was competent. If the appellant had determined that he would make Miss Snyder his wife, regardless of consequences, and that before he could succeed it was necessary that the deceased and his wife should die, an attack upon her, deadly in its character, after having taken the life of the deceased, was consistent with the method and purpose of a sound mind.

After the argument had closed the appellant asked the court to give the following instruction to the jury : " When considering this case, and affixing the punishment, if any is affixed, you should not consider the fact that the defendant injured Ellen Mottweiler, and let that control or influence the amount of punishment to be affixed for the killing of Jacob Mottweiler."

This instruction came too late, and therefore the court committed no error in refusing to give it. R. S. 1881, clause 6, section 1823 ; Foxwell v. State, 63 Ind. 539 ; Surber v. State, 99 Ind. 71 ; Grubb v. State, 117 Ind. 277.

But, conceding that the instruction states the law correctly, and supposing that it had been requested at the proper time, the court was only bound to give its equivalent. This the court did in its first instruction : " The offence charged is murder in the first degree in the killing of Jacob Mottweiler, and it is the only offence for which the defendant is

on trial or should be considered by the jury." And when the court came to instruct the jury as to the different degrees of homicide covered by the indictment, and for either of which the defendant might have been convicted, they were particularly instructed as to the punishment applicable to each degree. We think the jury fully understood from the instructions that they could only affix a punishment adequate to the crime of killing Jacob Mottweiler, in case they found the appellant guilty of felonious homicide.

From the evidence, as we find it in the record, there is, in our judgment, no doubt but that the appellant slew the deceased. There was some evidence offered tending to show that the appellant was a person of unsound mind, but this evidence was of a very weak character, and had no weight with the jury. Assuming, as the jury found, that the appellant was a person of sound mind, the killing was in cold blood, and brutal in its character.

The deceased and his wife took the appellant into their home, treated and cared for him as a member of their family, as parents would treat a child, and in return therefor he takes the life of one of his benefactors and seriously wounds the other, though his design to kill her fails, for no other apparent reason than that the woman he wished to make his wife had said to him that so long as the deceased and his wife were living she would not enter into the marriage relation. There is not to be found connected with the crime one extenuating circumstance, and that the jury meted out the extreme penalty of the law indicates a willingness on their part to do their whole duty.

The judgment is affirmed.

Filed June 26, 1889.