# CRIMINAL CASES

## Wytheville

### LOONEY v. COMMONWEALTH.

#### June 16, 1913.

#### Absent, Keith, P.

1. CRIMINAL LAW—*Change of Venue—Jury From Another County— Discretion of Trial Court—Appeal and Error.*—The trial court, in the exercise of the powers to change venue and summon juries from another county, conferred by sections 4024 and 4036 of the Code, must of necessity be allowed a wide discretion, and it is the established rule that this court will not reverse the judgment of the trial court unless it plainly appears that such discretion has been improperly exercised.

2. CRIMINAL LAW—*Jury From Another County—Change of Venue— Jury Obtained—Presumption.*—Generally a motion for a jury from another county or corporation should precede the motion for a change of venue (though cases may arise where this rule would be inapplicable) ; and where the motion for a change of venue is based on the ground that an impartial jury cannot be obtained in the county or corporation, the fact that an impartial jury was subsequently secured in the county raises a conclusive presumption that the motion was unfounded.

3. CRIMINAL LAW—*Renewal of Motion for Change of Venue or Foreign Jury.*—Although motions for a jury from another county, or for a change of venue, may have been properly overruled at one term of the court, they are reviewable at a subsequent time whenever the exigencies of the situation may call them into requisition.

4. CRIMINAL LAW—*Venire—Code, Section 4018, Mandatory—Case at Bar.*—Section 4018 of the Code prescribes the manner of selecting and summoning a venire in a case of felony, and its provisions are mandatory. Under its provisions, not more than twenty names can be drawn and placed in the list except for

good cause shown, and when more than twenty presons are ordered to be drawn and summoned the number drawn shall in no case be more than four in excess of the number to be summoned. The manifest object of the statute is to secure a drawn list of veniremen and to render it impossible to pack the jury. The violation of these provisions of the statute constitutes reversible error. In the case at bar, the first *venire facias* had been quashed, and the method adopted by the judge for obtaining the names for the second venire (making out a list of sixty names and directing the summoning forthwith of only thirty from that list) clearly indicated an intention on his part to secure the names of the thirty veniremen who had been summoned under the first venire. This was a departure from the mandatory provisions of the statute and constitutes reversible error, notwithstanding the good faith of judge and the probity of his motives.

5. CRIMINAL LAW—*Evidence—Controversy With Other Persons.*—On a trial for homicide, evidence of the details and merits of an antecedent controversy between the prisoner and a third person, in no way connected with the case on trial, occurring at a different time and place, and with which deceased was not concerned, and at which he was not present, and constituting no part of the *res gestae* of the case on trial, is not admissible.

6. CRIMINAL LAW—*Evidence—Town Ordinance—Authentication.*—Although the records of a town council were kept in a crude and careless manner, in an account book which had been used for other purposes and contained matter other than the by-laws and ordinances, the book may be received in evidence and will be sufficient proof of the adoption of an ordinance contained therein, if the record, when considered as a whole, contains a sufficient authentication of the passage of the ordinance in question.

7. CRIMINAL LAW—*Resisting Arrest—Provoking Affray—Killing Officer—Instructions.*—The following instruction without the modification made by the court, indicated by italics, is held to be erroneous: "The court instructs the jury that although they may believe from the evidence that the deceased at the time he was shot was attempting to arrest the accused, yet if they further believe from the evidence that in making such attempt he shot at the accused, and thereupon, because of said shooting at the accused by the deceased, the accused, believing himself in imminent danger of being killed or sustaining great bodily harm, *and being without fault in provoking the affray*, returned the fire and killed the deceased, such killing was not

murder, notwithstanding the jury may believe from the evidence that the accused had previously threatened to kill anyone who might attempt to arrest him."

8. CRIMINAL LAW—*Making Arrest—Resistance—Justification—Burden of Proof.*—When an officer armed with a lawful warrant attempts to make an arrest in obedience to its mandate, the *prima facie* presumption, in the absence of evidence to the contrary, is that he will discharge his duty in a lawful manner; and the burden rests on the accused, who undertakes to resist the arrest, to show that the officer's conduct was such as to justify such resistance.

Error to a judgment of the Circuit Court of Craig county.

*Reversed.*

The opinion states the case.

*O. B. Harvey* and *Wm. E. Allen,* for the plaintiff in error.

*Samuel W. Williams, Attorney General,* and *J. P. Jones,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, Harvey D. Looney, was found guilty of murder in the first degree, and, in accordance with the verdict of the jury, was sentenced to death by the circuit court of Craig county. The case is before us on a writ of error to that judgment.

The prisoner, when put upon trial, moved the court for a change of venue under section 4036 of the Code, the grounds for the motion being that the county of Craig is a small mountainous county sparsely settled, and that in the town of New Castle, the county seat and scene of the homicide, and throughout the entire county great prejudice and ill-will existed against the accused, both on account of the homicide and of numerous other difficulties in which he had been involved; that the deceased had a

large relationship and connection in the community and many wealthy and influential friends, who were taking an active part against him, and by whom the entire bar of the county had been employed to aid the prosecution; moreover, that he had been informed of threats to lynch him in the event of his acquittal. For these reasons the accused alleged that he could not secure a fair and impartial trial in the county. The affidavits of five persons were offered in support of the petition, and of twenty persons in opposition to the change of venue, and the court overruled the motion. Thereupon, the accused submitted a motion under section 4024 for a venire to be summoned from some other county or corporation, which motion was likewise overruled. The action of the court upon these motions constitutes the first and second assignments of error.

The trial court, in the exercise of the powers conferred upon it by sections 4024 and 4036, must of necessity be allowed a wide discretion, and it is the established rule that this court will not reverse the judgment of the trial court unless it plainly appears that such discretion has been improperly exercised. *Wormley's Case,* 10 Gratt. (51 Va.) 658, 672-3; *Cahoon's Case,* 21 Gratt. (62 Va.) 822; *Sand's Case,* 21 Gratt. (62 Va.) 871, 882-884; *Richards' Case,* 107 Va. 881, 59 S. E. 1104; *Bowles' Case,* 103 Va. 816, 48 S. E. 527.

It is also the general rule that a motion for a jury from another county or corporation should precede the motion for a change of venue; and where the motion is based on the ground that an impartial jury cannot be obtained in the county or corporation, the conclusive presumption from the fact that an impartial jury has subsequently been secured in the county is that such motion was unfounded. *Wright's Case,* 33 Gratt. (74 Va.) 880; *Joyce's Case,* 78 Va. 289; *Waller's Case,* 84 Va. 492, 496, 5 S. E. 364. Cases

may arise, however, where the general rule would be inapplicable and a motion for a change of venue should precede a motion for a jury from another county. *See Uzzle* v. *Commonwealth*, 107 Va. 919, 60 S. E. 52.

We are of opinion that there is no reversible error in these assignments; nevertheless, as both motions depend upon conditions existing at the time of trial, they are, as a matter of course, renewable upon a new trial whenever the exigencies of the situation may call them into requisition.

The third assignment of error is to the refusal of the court to quash the second *venire facias*. The facts touching this assignment are not disputed. On motion of the prisoner the first *venire facias* and list of veniremen was quashed because the venire was drawn in the presence of G. W. Layman, the commissioner in chancery designated for that purpose, it appearing that he was the active head of the prosecution. Thereupon the judge asked the sheriff if the persons summoned under the venire which had just been quashed were present in court, and being informed that they were still in attendance, he retired with the clerk to the clerk's office and shortly returned into court with a list of veniremen and a new *venire facias*. The accused submitted a motion in writing to quash the second list of veniremen and *venire facias* for certain reasons enumerated in the motion, which motion the court overruled. In that connection the court made the following statement: "All the names remaining in the jury box were drawn and all the available jurors in the box utilized, including such of the jurors as were upon the *venire facias* which was quashed in this case as were eligible jurors. That resulted in the drawing of sixty names. The judge of the court supposed that probably at least thirty of the jurors that had been drawn under the former *venire facias* were in attendance upon the court, and naturally expected that

the sheriff, being ordered to sumon forthwith, would summon the same jurors that were drawn under the former *venire facias,* the court understanding that there was no intimation that those jurors were drawn fraudulently, or there was any improper or fraudulent conduct in the drawing of these former jurors; and furthermore, that if a jury free from exception cannot be gotten out of those in attendance upon the court under the former *venire facias,* and who are summoned under the present *venire facias,* of course the statute will be pursued until the proper jury is obtained.    When the court ordered the second *venire facias* after the first one was quashed, the judge of the court and the clerk retired to the clerk's office.    The clerk produced the jury box, unlocked it, placed it on the table, and with a piece of paper in front of him prepared to record the names of the eligible jurors.    The judge drew the folded ballots from the box in the presence of the clerk, no one else being present but himself and the clerk, read the name of the juror, discussed with the clerk where he lived, his proximity to New Castle, his relationship, if any, to the prisoner, as well as to Mr. Oscar Martin, and selected sixty names from the box, which exhausted all of the eligible ballots in the box.    The clerk then prepared the *venire facias* in due form, inserted the names so selected and delivered the writ to the sheriff, by which he was directed to summon thirty of that number."

Section 4018 of the Code prescribes the manner of selecting and summoning a venire in a case of felony.   The ordinary course of procedure is for the list to contain the names of twenty persons drawn by the clerk of the court or his deputy from the names in the box as provided for by sections 3142 and 3144.    The drawing must be in the presence of the judge of the court, or, in his absence, of one of the commissioners in chancery designated for the purpose under section 3146, and also a reputable citizen

not connected with the accused or the prosecutor; or, in case of homicide, with the deceased, who shall be called upon for that purpose by the clerk conducting the drawing. If the attendance of the commissioner cannot be obtained, the drawing shall be in the presence of two reputable citizens not connected as aforesaid and called upon by the clerk. If there is drawn from the box the name of a person who has died, removed from the county, or is related to the accused or the prosecutor, or, in case of homicide, to the deceased, or lives within three miles of the place where the crime is charged to have been committed, such name shall not be placed on the list, but all other names drawn from the box shall be placed on the list as they are drawn, and when twenty names have been so placed the drawing shall cease. The section further provides that for good cause shown the judge may direct more than twenty names to be drawn and placed on the list and more than sixteen persons to be summoned. In such case he shall specify the number of names to be drawn and the number of persons to be summoned, and the number drawn shall not be more than four in excess of the number to be summoned. The concluding paragraph of the section declares that no irregularities or errors in drawing the names, or in making out or copying or signing or failing to sign the list, or in summoning the persons named in the list, shall be cause for summoning a new panel or for setting aside a verdict, or granting a new trial, unless objection thereto was made before the jury was sworn, and unless it appears that the irregularity, error or failure was intentional, or was such as to probably cause injustice to the Commonwealth or to the accused.

The record shows a plain departure from imperative provisions of the statute in several essential particulars. No good cause, or indeed any cause, was shown for directing more than twenty names to be drawn and placed in the

list to be summoned. Nevertheless, the second list of ve-
niremen contained the names of sixty persons, and the
order of the court and *venire faicias* directed the officer
to summon only thirty from that list. Moreover, the man-
datory provision of the law, that when more than twenty
persons are ordered to be drawn and summoned, the num-
ber shall in no case be more than four in excess of the
number to be summoned, was wholly disregarded.

The manifest object of the foregoing provision of the
statute is to secure a drawn list of veniremen and to render
it impossible to pack the jury. Sixty veniremen, it is true,
were in form drawn from the jury box, yet the persons
summoned on the second venire were practically the same
persons summoned on the quashed venire. Substantially
the same result would have followed if there had been no
drawing and the court had merely ordered the sheriff to
re-summon the original veniremen.

In these circumstances, the persons to be summoned
were known in advance, and the solemnity of drawing the
veniremen was an empty form. It was clearly the inten-
tion of the judge, by the method adopted, to secure the
names of the thirty veniremen in attendance on the court;
yet, had the statute been complied with, there would have
been a list of fifty-six persons instead of thirty from whom
to select the jury.

In what has been said we do not wish to be understood
as in any way reflecting upon the integrity of the honor-
able judge of the circuit court. It was conceded that he
acted in good faith. He did not think that the ground for
quashing the original *venire facias* involved the eligibility
of the veniremen, but merely the fitness of the commis-
sioner in chancery to participate in drawing them, and his
sole purpose in pursuing the method adopted was to facili-
tate the trial of the case. Still, the probity of his motives
cannot justify the utter disregard of these imperative and

essential provisions, and such omission to comply with the statute constitutes reversible error.

In *Hall's Case,* 80 Va. 555, 561, the court, speaking through Lewis, P., says: "These provisions of the statute, in respect to empaneling juries, are not directory merely, but imperative. They are rules which are made essential in proceedings involving life or liberty, and it is the right of the accused to demand that they be strictly complied with. The disregard of them is to deprive the accused of that 'due process of law' which is provided by the legislature, and which is required by the fundamental law of the land."

The importance of the observance by the courts of these safeguards thrown around the accused cannot be overstated. As was well said by Judge Harrison in *Hoback's Case,* 104 Va. 871, 879-80, 52 S. E. 575, 578: "Jurors as triers of the fact wield far more power than the judge on the bench, in the trial of an accused person, and the legislature has seen fit to safeguard the rights of the Commonwealth and the accused by the enactment of mandatory provisions for the constitution of this important branch of the judicial system, which the courts are not at liberty to disregard, even if they deemed it expedient to do so." *Jones' Case,* 100 Va. 842, 41 S. E. 951; *Patrick's Case,* post p. 78 S. E. 628, in which an opinion has been handed down during the present term.

We may observe that *Hardy's Case,* 110 Va. 910, 67 S. E. 522, does not sustain the action of the trial court in the particulars we have been discussing. In that case the irregularity complained of was that the sheriff summoned the entire list of forty persons drawn as veniremen instead of thirty-six as ordered by the court—an irregularity which could not have prejudiced the accused.

The fourth assignment of error involves the admission by the court, over the objection of the accused, of the de-

tails and merits of an antecedent controversy between the prisoner and W. O. Caldwell. There was no connection between that difficulty and the subsequent shooting of the deceased. It occured at a different time and place, and the deceased was not present or concerned in the altercation. The evidence was not connected with the homicide and was no part of the *res gestae;* it was, therefore, inadmissible. *Joyce's Case,* 78 Va. 287; *O'Boyle's Case,* 100 Va. 785, 40 S. E. 121.

The fifth assignment of error challenges the authentication of the ordinance of the town of New Castle, upon which warrants for the arrest of the prisoner were based.

It is true that the records of the council were kept in a crude and careless manner in an account book or ledger which had been used for other purposes and contained matter other than the by-laws and ordinances, and, moreover, that a sheet of type-written matter, concerning the business of the town, was injected between the by-laws and ordinances and the certification and signatures of the clerk and mayor. But, considering the record as a whole, we think it contains a sufficient authentication of the passage of the ordinance in question, and was properly admitted in evidence.

The sixth and last assignment of error which demands our attention relates to the ruling of the court in relation to instructions.

While the record shows that the accused excepted to the refusal of the court to give a number of instructions, and also to its action in modifying other instructions, those to which our attention was specifically drawn by the oral argument were 11, 14, 15, 16 and 20.

The court modified 11 by interpolating the words, "being without fault in provoking the affray," and 16 by words of like import. Instruction 11, as modified, is as follows:

"The court further instructs the jury that although they may believe from the evidence that the deceased at the time he was shot was attempting to arrest the accused, yet if they further believe from the evidence that in making such attempt he shot at the accused, and thereupon, because of said shooting at the accused by the deceased, the accused, believing himself in imminent danger of being killed or sustaining great bodily injury, *and being without fault in provoking the affray,* returned the fire and killed the deceased, . . . such killing was not murder, notwithstanding the jury may believe from the evidence that the accused had previously threatened to kill any one who might attempt to arrest him."

This instruction does not undertake to define the degree of guilt of the accused, if any, in the circumstances set forth in the instruction. But upon substantially the same hypothetical statement of facts the jury are told in instruction 16 that the killing would be justifiable (more accurately, *excusable*) homicide. Both the instructions without the modification would have been erroneous, and instruction 14 is amenable to the same objection.

Instructions 15 and 20, which are practically identical, are not a correct exposition of the law. Instruction 15 told the jury "that when the Commonwealth relies upon the fact that the homicide was committed by the defendant during the resistance to a lawful arrest, it has the burden of proving the legality of the arrest beyond a reasonable doubt."

Where an officer armed with a lawful warrant attempts to make an arrest in obedience to its mandate, the *prima facie* presumption, in the absence of evidence to the contrary, is that he will discharge his duty in a lawful manner; and the burden rests upon the accuser, who undertakes to resist the arrest, to show that the officer's conduct was such as to justify such resistance.

·As a new trial must be granted upon other grounds, it is unnecessary to consider the court's action in overruling the motion of the accused for a continuance.

For the errors to which attention has been called, the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had therein.

*Reversed.*