## HAMILTON *v*. STATE OF INDIANA.

[No. 26,358. Filed June 20, 1934. Rehearing denied
September 18, 1934.]

98

*Ira M. Holmes, Elzo O. Rogers, Holmes, Ermston & Holmes,* and *Rogers & Smith,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, *James D. Sturgis,* Deputy Attorney-General, and *Floyd J. Mattice,* for the State.

ROLL, J.—This is a prosecution by the State of Indiana against appellant and another upon an indictment returned by the grand jury of Marion county, wherein appellant is charged with murder in the first degree while in the perpetration of a robbery. Acts 1929, p. 137, §2412, Burns Ann. St. Supp. 1929, §10-3401, Burns 1933.

Appellant and his co-defendant, Charles Vernon Witt, both applied and obtained a change of venue from Marion county, and the cause was sent to Boone county,

Indiana. In the Boone circuit court the defendants applied for and were granted separate trials. Witt was tried first, and convicted. Appellant was arraigned in the Boone circuit court and entered a plea of not guilty. He was tried in July, 1932, in which trial the jury failed to agree and was discharged. He was again placed upon trial in November, 1932, and the jury returned a verdict of guilty as charged.

The Honorable Brenton A. DeVol was special judge and presided at the first trial. Appellant, before his first trial, filed his request to have a jury drawn from an adjoining county, under the provisions of sections 2260-2264, Burns Ann. St. 1926, §§9-1507—9-1511, Burns 1933, §§2247-2251, Baldwin's 1934, Acts 1905, p. 153. Judge DeVol granted appellant's petition and entered an order as provided by the above statute. The jurymen were summoned from Montgomery county. That jury failed to agree on a verdict, and was discharged. Later Special Judge DeVol resigned as such special judge and Judge Frederick E. Hines of the Hamilton circuit court was duly selected as special judge to try this case. On November 10, 1932, Special Judge Hines ordered a special venire of forty names to be drawn from the jury box. Appellant filed a motion to set this special venire aside for the reason the court had theretofore by its judgment directed that the jurors be drawn from Montgomery county. This motion was overruled. Appellant filed a motion to remove and set aside certain prospective jurors, for the reason they were not drawn by the jury commissioners out of the jury box but were selected by the sheriff. This motion the court overruled. The court ordered the drawing of several additional special venires, all of which were drawn by the jury commissioners out of the jury box, and finally a jury was impaneled and sworn to try the cause.

Appellant was found guilty of murder in the first

degree as charged in the indictment, and sentenced to death as provided by law.

Appellant's motion for a new trial was overruled, and the only error assigned in this court is the overruling of his motion for a new trial.

Appellant assigns eight reasons in his motion for a new trial: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3)-(4) and (5) relate to the admission of certain evidence over the objection of appellant; (6)-(6½) and (7) relate to the giving and refusal of certain instructions.

Appellant first contends that the verdict is not sufficient to overcome the presumption of innocence and second he contends that State's "exhibit 3" was erroneously admitted, but says that this proposition will be discussed fully under cause five of the motion for a new trial.

We will discuss the sufficiency of the evidence, and the admission of State's "exhibit 3" after we have disposed of other questions presented.

The second ground for a new trial is, "the verdict is contrary to law" and under this cause for a new trial appellant seeks to present the following points: (1) Of overruling of his motion to set aside venire of jurors; (2) of overruling of his motion to exclude certain prospective jurors; (3) of being denied a fair trial because tried before a jury, drawn from Boone county, the place of trial; (4) that drawning jurors from Boone county was contrary to law, and therefore prejudicial to appellant; (5) that the selection of persons for jury service by the sheriff was contrary to law and prejudicial to appellant; and (6) of the court's refusal to permit the court reporter to read the testimony of Helen Zyskowski given at a former trial.

We learn from the record that all of the above motions

were made before the jury was selected and sworn to try the case. Appellant did not challenge the ▮ array of the jury or move to dismiss the jury thus selected or to withdraw the submission therefrom. Appellee points out in its brief that no question touching the alleged improper impaneling of the jury was properly saved or is presented by the record in this case. It points out that an error in connection with the impaneling of the trial jury cannot be assigned or specified under the ninth statutory ground for a new trial, but must be assigned or specified in a motion for a new trial under the first statutory ground, as provided in §2325, Burns Ann. St. 1926, §9-1903, Burns 1933, §2310, Baldwin's 1934, which reads in part as follows:

> "Sec. 2325. (2158) Causes—Motions. 282. The court shall grant a new trial to the defendant for the following causes, or any of them:
>
> First. Irregularities in the proceedings of the court or jury, or (for) any order of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial.
>
> Ninth. When the verdict of the jury or the finding of the court is contrary to law or is not sustained by sufficient evidence."

The statute is sufficient within itself to sustain appellee's position. It has been decided many times by this court that the trial of a case does not begin until the jury has been impaneled and sworn. *Durst* v. *State* (1920), 190 Ind. 133, 128 N. E. 920; Ewbank Criminal Law, Sections 372, 392, 700; *Cosilito* v. *State* (1926), 197 Ind. 419, 151 N. E. 129; *Bruce* v. *State* (1927), 199 Ind. 489, 158 N. E. 480; *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762; *Collett* v. *State* (1901), 156 Ind. 64, 65, 59 N. E. 168. It therefore follows that the error of which appellant complains did not occur at the trial. This point is well stated in the following excerpts from the case of *Bush* v. *State* (1920), 189 Ind. 467, 471, 128 N. E. 443.

"The overruling of appellant's challenge to juror Kuhler is also assigned as a cause in his motion for a new trial, and is therein stated as 'an error of law occurring at the trial.' The state makes the point that the trial did not begin until the jury was impaneled and sworn, consequently the alleged error of which appellant complains did not occur at the trial.

"Section 2158 Burns 1914, Acts 1905, p. 584, §282, prescribes various causes for which a new trial may be granted. One of the causes thus provided, clause 7, is for 'error of law occurring at the trial.' The ruling now under consideration, as we have seen, was specifically assigned as a cause for a new trial under clause 7, *supra,* and not under clause 1, as appellant would have us treat it. We must assume that the court below ruled on the motion as presented by the record before us, and for us not to do so would be a violation of a long-settled rule in this jurisdiction that every reasonable presumption should be indulged in favor of the jurisdiction, rulings and regularity of the proceedings of the trial court. *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762. We would have a different proposition if this ruling had been brought under clause 1, *supra. Collett* v. *State* 1901), 156 Ind. 64, 59 N. E. 168."

And at page 474 of the same opinion of this court it is said:

"In the instant case the claimed erroneous ruling occurred before the jury was impaneled and sworn. Therefore under the authorities cited the ruling in question is not before this court for review as an error of law occurring at the trial."

The alleged improper proceedings in the selection of jurors and impaneling the trial jury presents no question for the consideration of this court by assigning and specifying the ninth statutory ground for a new trial, viz., "that the verdict is contrary to law" for the reason that, this specification means and relates to the law as applied to the facts as shown by the evidence. It means that applying the law to the facts as shown by the evi-

dence there is no basis in law for a verdict of guilty. It is virtually a demurrer to the evidence. *Gaines* v. *Taylor* (1933), 96 Ind. App. 378, 185 N. E. 297, 298; *Metropolitan Life Ins. Co.* v. *Lyons* (1912), 50 Ind. App. 534, 98 N. E. 824, 825; *DeTarr* v. *State* (1906), 37 Ind. App. 323, 76 N. E. 897; *Louisville, etc., Ry. Co.* v. *Renicker* (1893), 8 Ind. App. 404, 35 N. E. 1047; *Phenix Ins. Co.* v. *Rogers et al.* (1894), 11 Ind. App. 72, 38 N. E. 865. The rule governing this proposition is well stated in the case of *Gaines* v. *Taylor, supra,* p. 381, and we quote the following from that case with approval:

> "A verdict is 'contrary to law,' in the sense that a new trial should be granted for the reason that it is contrary to law, 'when, *in its general scope and meaning,* it is contrary to the principles of law applicable to the case, and not merely defective in some particular.' *Anderson* v. *Donnell et al.* (1879), 66 Ind. 150, 160; Watson's Works Practice and Forms, Sec. 1996. In the case of *Louisville, etc., Ry. Co.* v. *Renicker* (1893), 8 Ind. App. 404, 35 N. E. 1047, and in the case of *Phenix Insurance Co.* v. *Rogers et al.* (1894), 11 Ind. App. 72, 38 N. E. 865, 869, this court quotes with approval from Buskirk's Practice, as follows: 'A motion for a new trial on the ground that the verdict or decision is contrary to law is somewhat in the nature of a demurrer to the evidence. It admits all the evidence given upon the trial, but says that, as the verdict or decision based upon such evidence is contrary to the general principles of the law applicable to the issues involved, judgment should not be rendered thereon.'
>
> "We hold in accordance with the above quoted statements, that a contention that a verdict is contrary to law, is in effect a contention that if the general principles of law applicable to the evidence in this case, be applied, a different conclusion will necessarily be reached. We do not think that the application of the general principles of law applicable to this case, when applied to the evidence in this case, forces a different conclusion than was reached by the jury, hence we hold that the judg-

ment in this case would not be reversed on the ground that the verdict is contrary to law."

This is no technical rule, but a rule which has its roots in sound reason. The purpose of setting out specifically the reasons why a new trial should be granted, is to inform the trial court of the various complaints relied upon by the appellant for a new trial and to call the same to the attention of the court for a review, and to afford it an opportunity to correct any error complained of. We must assume that the court below considered appellant's motion for a new trial as it was presented by the record and governed itself by the rule of law above mentioned. For us not to do so would be a violation of a long settled rule of this state that every reasonable presumption should be indulged in favor of the jurisdiction, rulings, and regularity of the proceedings of the trial court. *Witt* v. *State* (1933), 205 Ind. 499, 185 N. E. 645.

Any alleged disqualification of any jurror who served at the trial of this cause is also not cognizable under the ninth statutory cause for a new trial. The record does not show that appellant made any effort to have any juror discharged by means of challenge for cause, peremptory challenge, challenge to the array, or by moving to set aside the submission of the case to the jury. Under such state of the record there is no grounds for a new trial. *Douthitt* v. *State* (1895), 144 Ind. 397, 42 N. E. 907.

Under the same assigned reason for a new trial, viz., "that the verdict is contrary to law," appellant urges a reversal of this cause, in refusing to permit the court reporter to read to the jury the testimony of Helen Zyskowski, a witness for appellant at a former trial.

It is well settled by the decisions of this court and the statute, §2325, Burns Ann. St. 1926, §9-1903, Burns

1933, §2310, Baldwin's 1934, is clear upon this point, that an error alleged to have occurred by reason of the court refusing to admit testimony offered by the defendant must be assigned or specified in a motion for a new trial in order that appellant may be entitled to have same considered on appeal, under the seventh statutory ground, viz., "error of law occurring at the trial," and not under the ninth ground as appellant has erroneously done. We need only refer to the quotation heretofore set out from the case of *Gaines* v. *Taylor, supra,* in support of the above proposition.

It will be noted from what we have said that appellant has attempted to present by the ninth statutory ground for a new trial, viz., "that the verdict is contrary to law," three separate questions: First, that the court erred in selecting a jury from Boone county; second, in permitting certain jurors to sit who were not drawn from the jury box by the jury commissioners, but who were selected by the sheriff (which is not in fact shown by the record except by appellant's motion), and third, in refusing to permit the court reporter to read in evidence the testimony of Helen Zyskowski given at a former trial. If these three causes can be presented by assigning in the motion for a new trial, "that the verdict is contrary to law," then by the same reasoning every alleged error of the lower court could be presented under the ninth statutory ground. To say the least, it would be a joint assignment, or an assignment in gross, and under the authorities it would present no question unless all of his contentions are upheld. If any one of the matters complained about was not improper no error is available to appellant on the others. *Osburn* v. *State* (1905), 164 Ind. 262, 73 N. E. 601. This observation, it seems to us, is sufficient to show the fallacy of appellant's contention, that one may

present these several questions under the assignment in his motion for a new trial, "that the verdict is contrary to law;" and that this assignment as a ground for a new trial means something entirely different from that contended for by appellant.

Referring again to the quotation from *Gaines* v. *Taylor, supra,* we hold in accordance with this quotation that the contention that a verdict is contrary to law in effect, means that, if the general principles of law applicable to the evidence in the case be applied, a different conclusion will necessarily be reached. We do not think that the application of the general principles of law, when applied to the evidence in this case, forces a different conclusion than was reached in the trial court; hence we hold that the judgment below should not be reversed on the ground that the verdict is contrary to law.

Appellant by his third, fourth, and fifth ground for a new trial, questions the correctness of the court's ruling in admitting over the objection of appellant the testimony of officers Marren and Glenn of conversations with appellant amounting in effect to a confession of guilt, and in admitting State's exhibit No. 3, which is the written signed confession of guilt of the appellant.

If it was not error to admit the written confession of appellant (State's exhibit 3), it was not error to admit the testimony of the two officers.

Appellant contends that it is reversible error for the court to admit the written confession of appellant in evidence, for the reason, that said alleged written confession was not voluntary, but was made and signed through threats and fear, and after he had been subjected to bodily violence.

The court, in the absence of the jury, heard evidence at great length upon this subject. The evidence was

conflicting. The record shows that appellant was arrested at Iola, Kansas, on May 27, 1931, after the indictment had been returned charging him with murder in the first degree; that he was returned to the state of Indiana by train and arrived at Indianapolis about 1 P. M.; that appellant and the officers had dinner on the train immediately before it arrived in Indianapolis; that appellant was taken to police headquarters where later in the afternoon, about 5 o'clock, officers assigned to the case began questioning appellant relative to his part in the murder. The questioning continued, with some interruptions, until some time between 7 and 9 o'clock that evening when appellant made certain admissions concerning his part in the crime to officers Marren and Glenn, which was the subject of their testimony objected to herein by appellant, but he stated that he would not put it in writing. After he had made the oral admission to the above named officers they said to him that now that he had told the truth about it, why shouldn't he put it in writing, and as a result of their efforts to induce him to do so shortly after midnight he told them they could put it in writing and he repeated what he had told them between seven and nine o'clock that evening, and as he repeated it one of the officers wrote it down, but after it was written appellant said he would not sign it until he had seen his lawyer. He was then informed that his co-defendant Witt had signed a written confession, but appellant said he did not believe Witt had done so, and requested the officers to bring Witt over from the jail that he might ask him whether he had confessed. Appellant was informed that they could not bring Witt out of the jail after 5 o'clock in the evening, but they did exhibit to him Witt's confession, which appellant read. About 7 o'clock in the morning appellant signed the confession which was State's Exhibit 3. The officers testified that they did

not strike him or inflict any injury or assault upon him, or in any way mistreat him. Appellant testified that the officers assaulted him, inflicted various tortures upon him, denied him food and sleep.

The court, after hearing all the evidence concerning the signing of the confession and all the circumstances surrounding the same, determined that the confession was not made under the influence of fear produced by threats or by intimidations or undue influence, but that it was given voluntarily, and permitted the same to be introduced in evidence.

It seems well settled that confessions, under §2271, Burns Ann. St. 1926, §9-1607, Burns 1933, §2263, Baldwin's 1934, are admissible in evidence against the defendant except those made under the influence of fear produced by threats or by intimidation or undue influence. *State* v. *Freeman* (1859), 12 Ind. 100; *Benson* v. *State* (1889), 119 Ind. 488, 21 N. E. 1109; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279; *Ogle* v. *State* (1920), 193 Ind. 187, 127 N. E. 547, and it has also been held that the admissibility of confessions against the accused must ordinarily depend upon a preliminary question of law and fact exclusively for the trial court, subject to review on appeal, as other like questions. *Ogle* v. *State, supra.*

It was stated in *Mack* v. *State* (1932), 203 Ind. 355, 372, 180 N. E. 279, that,

"If the admission of a confession in evidence is objected to by a defendant, the question of whether or not it is competent is one for the court to determine. In the absence of the jury, the court should hear evidence as to the circumstances under which the confession was made, and the burden of proving the confession incompetent is upon the defendant. *Brown* v. *State* (1880), 71 Ind. 470; *Palmer* v. *State* (1893), 136 Ind. 393, 36 N. E. 130; *Hauk* v. *State* (1897), 148 Ind. 238, 46 N. E. 127, 47 N. E. 465."

There was nothing contained in the written confession disclosing that it was not voluntarily made. In fact it contained the statement that it was made voluntarily. The confession was *prima facie* competent, and the burden was upon appellant to prove its incompetency. The court, in accord with recognized principles of procedure, did hear the evidence upon this question. While the admissibility of evidence is a question of law, such question however does depend upon the facts produced at the hearing. In this case the evidence as to whether the confession was given voluntarily or involuntarily was conflicting. Where a court must decide upon the competency or incompetency of evidence and such decision depends upon the existence or non-existence of certain facts as shown by the evidence and the court after hearing such evidence determines that it is competent, this court on appeal will not disturb the decision of the lower court, unless it clearly appears that the court was wrong. It was said in *Hauk* v. *State, supra,* p. 252, upon this question:

> "Again, upon another view of the question, the competency of this confession as evidence against appellant was made an issue before the trial court for its determination, and as there is evidence introduced which well and fully supports its decision in holding the confession to be competent, we are not authorized to weigh the evidence given upon the point involved, or attempt to reconcile any conflict therein, but, under a well settled rule, we are required to sustain the finding thereon of the lower court."

In the case of *Mack* v. *State, supra,* the court there was presented with this same question. The opinion sets out at length the evidence aduced at the hearing before the court. The appellant there testified of threats of bodily harm, abuse, and the application of force, denial of food, etc., all of which was denied by the officers. The court there said upon this question, p. 374:

"The evidence was ample to sustain the trial court's determination that the confession was admissible in evidence. This court will not weigh the evidence given in the trial court upon the competency of the admission in evidence of a written confession made by a defendant."

In *Thurman* v. *State* (1907), 169 Ind. 240, 241, 82 N. E. 64, the court said:

"The court excused the jury, and, after hearing the evidence of the appellant and the State, held that said confessions, oral and written, were admissible in evidence under §2115, *supra*.

"It has been held by this court that 'a confession by a person accused of crime is presumed to be voluntarily made until the contrary is shown.' *Hauk* v. *State* (1897), 148 Ind. 238, 252. See, also, *Ginn* v. *State* (1903), 161 Ind. 292, 293.

"As the evidence given to the court on the hearing of this question takes up some seventy-five pages of record it would unnecessarily extend the opinion to set it out; but we have read the same, and are of the opinion that the court did not err in admitting the evidence of said confessions. Moreover, as the question whether said confessions or any of them were made by appellant 'under the influence of fear produced by threats, or by intimidations or undue influences,' was an issue of fact before the court below for its determination, and as there was evidence introduced which fully supports its decision that said confessions were competent evidence, we are not authorized to weigh the evidence given to the court or interfere with said decision."

We have read the record evidence in this case adduced at the hearing and find that the evidence fully supports the decision of the trial court. There was no error in the admission of the testimony complained of in appellant's 3rd, 4th, and 5th grounds for a new trial.

Appellant's other grounds for a new trial are as follows:

"6: Error of law occurring at the trial in this:

The court erred in giving of its own motion instructions numbered 7 and 13.

▉ "6½: Error of law occurring at the trial in this: The court erred in giving instructions requested by the state, to wit: Number *12, 13*, 14 and 15.

"7: Error of law occurring at the trial in this: The court erred in refusing instructions numbered 2, *3, 4, 5, 6, 7, 8, 9, 10, 11,12*, 13, *14*, 15, 23, 24, 29, 31, 35 and 36 tendered by the defendant."

It will be noted by specification No. 6, appellant assigns error jointly and in gross, the giving by the court on its own motion of two instructions, number 7 and 13, and having assigned error jointly and in gross on two instructions, if either of these instructions are correct, the error if any is not available to reverse the judgment. Appellant in his brief waives any alleged error as to the giving of instruction No. 13. We quote from appellant's brief, Vol. 2, page 46.

"Appellant waives his objection to court's instruction number thirteen and therefore will not discuss it."

In *Hannan* v. *The State* (1897), 149 Ind. 81, 82, 47 N. E. 628, the court said:

"There are several reasons why the alleged error of the court 'in giving instructions numbered seven (7) and ten (10)' is not available to reverse the judgment. To make the assignment good, both instructions should be erroneous; whereas, as we think, one, at least, was good."

The same rule is announced in *Osburn* v. *State* (1905), 164 Ind. 262, 267, 73 N. E. 601. Where it is said:

"Four separate and distinct rulings of the court below made against appellant in overruling objections of appellant to the conduct of the prosecuting attorney in his argument to the jury are assigned, jointly or in gross, as the fourth cause for a new trial. To render the same available, all of said rulings must be erroneous. *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, 663, 664; *Ohio, etc., R. Co.* v. *McCartney* (1890), 121 Ind. 385, 387."

This is true with appellant's assignment No. 6½. Here again in his brief he waives any objections to instructions 12 and 13. The same is true with his assignment No. 7, and again in his brief he waives error in giving instructions numbered 3, 4, 6, 7, 8, 9, 10, 11, 12, 14 and 35. We quote again from appellant's brief, Vol. 2, pp. 66 and 67.

> "Instruction Number Three tendered by the defendant is a proper statement of the law, but was substantially covered by the court's instruction Number Eleven, therefore appellant withdraws his objection to the refusal of the court to give his instruction Number Three and will not discuss it as error."
>
> "Instructions Numbered 4, 6, 7, 8, 9, 10, 11 and 12, relating to the doctrine of included offenses, this issue has been decided against the appellant's contention in the case of *Witt* v. *State* and *Mack* v. *State* and therefore will not be presented by the appellant in this brief."

We have not in this opinion pointed out many defects in appellant's brief. If this court had been inclined to be technical and exacting with reference to its rules in the preparation of briefs, we could with good reason have held, as the state pointed out in its brief, that not a single question was presented for the consideration of this court by appellant's brief. But in view of the fact that the death penalty was imposed in this case we feel that we are justified in our determination to examine the questions attempted to be presented by the record. In doing so we fully realize that we are going beyond well settled principles of law and the rules of this court. We do not wish to be understood, however, in doing so that we mean to overrule or in any way disturb any former decisions of this court on its rules governing the preparation of briefs.

The question mentioned in the first part of this opinion relates to the selection of a jury from Boone county.

The facts upon this proposition seem to be, that under §2260, Burns Ann. St. 1926, §9-1507, Burns 1933, §2247, Baldwin's 1934, Special Judge Brenton A. DeVol made an investigation in good faith, for that purpose, and was satisfied that it would be improbable that a jury without bias or prejudice could be obtained within Boone County and entered an order of such determination. This order was carried out and a jury was selected from Montgomery County, which jury failed to reach a verdict, and was discharged. Thereafter Special Judge Brenton A. DeVol refused to serve further and Frederick E. Hines was duly appointed special judge in this case. The first trial was had in July, 1932, and the second trial was not called until November, 1932. Appellant made no request that Special Judge Hines make an investigation as to the probability or improbability of securing a fair and impartial jury in Boone County, and neither is there any showing to that effect. The questions and answers of the jurors on their *voir dire* is not in the record and we assume that the jurors selected to try the cause were not biased or prejudiced, as they qualified and took an oath to fairly and impartially try the cause.

From a reading of the statute mentioned above, it is apparent that the *judge* is not required to make the investigation referred to in the statute unless he shall, before or during the impaneling of the jury, be satisfied that it will be improbable that a jury without bias or prejudice can be obtained within the county. It is appellant's contention that the order entered by Special Judge DeVol in the former trial was binding upon Special Judge Hines. The statute does not so state. It is altogether possible that even though such conditions did exist in July, 1932, at the time Judge DeVol made his investigation and finding, it by no means follows, in the absence of any showing, that the same

conditions existed in the following November when appellant was called for trial the second time. In fact it has been held that the fact that an impartial jury has subsequently been secured at the place where the cause is pending is conclusive proof that the motion for a jury from another county was without foundation. *Taylor* v. *Com.* (1918), 122 Va. 886, 94 S. E. 795; *Looney* v. *Com.* (1913), 115 Va. 921, 78 S. E. 625. Appellant has cited no authority whatever to sustain his proposition. We are not impressed with the argument that the action of Special Judge DeVol was conclusive and binding upon Special Judge Hines. It was in no sense a final judgment but only the finding of the existence of a fact at the time, which under such conditions authorized him to provide a jury drawn from an adjoining county. This was a duty laid by statute upon every judge who presides at the trial where the defendant is charged with a felony. Upon the merits of appellant's question we find no error. See *Commonwealth* v. *Carnes* (1907), 124 Ky. 340, 98 S. W. 1045; *Wood* v. *Com.* (1926), 146 Va. 296, 135 S. E. 895.

As to appellant's next question, viz., the overruling of his motion to discharge all jurymen because not drawn from the jury box, the record does not not show that the court ordered the drawing of prospective jurors in any other manner than that provided by law. When the record is silent upon the subject of such a proceeding it will be presumed that the court's action in respect thereto was proper and regular. *Witt* v. *State, supra.*

The next question attempted to be presented was the action of the court in refusing to permit the official court reporter to read in evidence the testimony of Helen Zyskowski, given at a former trial. The facts as we get them from the record (appellant fails to set them out in his brief) are as follows: Helen

Zyskowski lived in Iola, Kansas. She was present and testified at the former trial, but she was not present at the second trial. Appellant made no showing as to why she was not present except that the witness was beyond the jurisdiction of the court. In support of his contention that it was error to exclude this testimony appellant cites and relies upon the case of *Sekularac* v. *State* (1933), 205 Ind. 98, 185 N. E. 898. We have examined this case and the question presented in that case was whether the objection there stated was a sufficient reason for rejecting the offered testimony. The state offered its Exhibit 2 in evidence. This exhibit consisted of the evidence of Anna Jenkins transcribed by the witness Jennie Wiley. The defendant objected, "for the reason that the witness testifying, and the person that took down this evidence was not sworn to take down the evidence and was not an official court reporter and that she was not qualified to report the evidence in this case at the time she took down the evidence." The court said that the sole question presented is based upon the foregoing objection. The court observed the following:

> "It is seen from the objection, that no objection was made on the ground that there was not a sufficient effort shown to secure the attendance of Anna Jenkins at the trial and that her testimony could not be procured. This was the question presented in the case of *Levi* v. *State,* 182 Ind. 188, 104 N. E. 765, . . ."

The court held that the objection could not be sustained. But this case does not support appellant's contention. Appellant made no showing that the witness was not available at the trial, except that she was beyond the jurisdiction of the court. No reason was given why her deposition could not have been taken. This was not sufficient to render the exclusion of the testimony reversible error. §2274, Burns Ann. St. 1926, §9-1610,

Burns 1933, §2266, Baldwin's 1934; *Briseno* v. *State* (C. C. of A. Ohio) (1930), 173 N. E. 617; *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235; *Levi* v. *State* (1914), 182 Ind. 188, 104 N. E. 765; *Wilson* v. *State* (1911), 175 Ind. 458, 93 N. E. 609. There was no error in excluding this testimony.

We have heretofore discussed the alleged errors assigned by appellant in his motion for a new trial with reference to permitting the two officers to testify to conversations with appellant wherein he admitted his part in the commission of the crime charged against him and in admitting appellant's written confession. The other errors complained of relate to the giving and refusal of certain instructions.

Appellant does not bring all of the instructions given into the record by his bill of exceptions. He incorporated only those of which he complains. When appellant has not set out in his brief all the instructions given by the court, but only those he questions, we would be justified in presuming that any curable error was cured by other instructions. *Chesterfield* v. *State* (1924), 194 Ind. 282-288, 141 N. E. 632.

Appellant objects to instruction No. 7, given by the court on its own motion. The objectionable part of the instruction pointed out by appellant is to the effect that the court told the jury that it was the judge of the law as well as the *evidence*. That because the court did not say *facts* instead of using the word *evidence,* the instruction was erroneous. Could the jury by this instruction have been confused or misled to the substantial injury of appellant? We think not. While the instruction is not worded as is usually given, yet the meaning is not confusing and could not have harmed appellant in any way. If not, there was no reversible error. Appellant complains of the latter part of this instruction which is as follows:

"It is, however, the duty of the jury to avail themselves of the opportunity which may be afforded them here to ascertain what the law governing the case before them is, and it is your right, after hearing all that may be properly said on the subject, to determine what the law in that respect ought to be held to be."

We cannot commend the language used as a model instruction, but in view of instruction No. 6, given by the court on its own motion, we do not think appellant was harmed by the above language. Instruction No. 6 is as follows: (Appellant admits this instruction correctly states the law.)

"The Constitution of this state makes the jury the judges of the law as well as of the facts. But this does not mean that the jurors may wilfully and arbitrarily disregard the law, nor that they may make and judge the law as they think it should be in any particular case. It means that the jurors under their oaths should honestly, justly and impartially judge the law as it exists, and as it is found upon the statutes of our state, in each particular case. It does not mean that jurors may so judge the law in any case so as to make it null and void and of no force, but that they shall so judge the laws as to give them all a fair and honest interpretation, to the end that each and every law in each and every case may be fairly and honestly enforced. Any other interpretation of the law would weaken the safeguards erected by society for its protection; for by the non-enforcement of the law and its penalties in all criminal cases where it is shown by the evidence, beyond a reasonable doubt, to have been violated, contempt for the law is bred among the very class that it is intended to restrain.

"The facts must be judged and found by the jury from a careful consideration of all the testimony given by the witnesses in the case, and under your oaths you have no right to arbitrarily disregard either the law or the facts in the case, without just cause, after a fair and impartial consideration of both."

It would extend the length of this opinion unduly to set out the instruction to which appellant makes complaint, in full. We deem it sufficient to say that most of the instructions tendered by appellant and refused by the court, and which are urged by appellant in his brief, were fully and correctly covered by the court in other instructions given. Reading all the instructions as a whole, we have determined that there was no reversible error in the giving or refusal to give instructions, but on the other hand we feel that the jury was fully and rightfully instructed on the law applicable to this case and appellant suffered no harm by reason of the instructions.

Appellant admits in his reply brief that the evidence was sufficient to support the verdict so we need not consider this alleged error assigned in his motion for a new trial.

We have given this case our earnest consideration and find no reversible error in the record.

Judgment affirmed.