# HEACOCK *v.* STATE OF INDIANA.

[No. 25,069.   Filed January 22, 1931.]

*Carl M. Gray,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

MYERS, C. J.—Appellant, in the Pike Circuit Court, was by indictment charged, tried and convicted of maintaining and assisting in maintaining a common nuisance. Acts 1925 p. 144, §24, §2740 Burns 1926.

The errors upon which appellant relies for reversing

the judgment against him are: That the court erred in overruling his motion to quash the indictment, and in overruling his motion for a new trial. He insists that his motion to quash should have been sustained for the reasons: (1) That the indictment failed to charge the offense with sufficient certainty; and (2) that Acts 1925 p. 144, §24 is unconstitutional and void, because the subject of §24 is not embraced in the title of the act.

In the instant case, the indictment charges that the appellant, in the county of Pike, in the State of Indiana, on May 14, 1925, "did then and there unlawfully maintain and assist in maintaining a common nuisance, to wit: a place where intoxicating liquor was then and there being manufactured, and where persons were then and there permitted to resort for the purpose of drinking intoxicating liquor as a beverage."

Appellant insists that the foregoing indictment is bad for uncertainty, in that, it insufficiently describes the place where the alleged nuisance was maintained; and that it fails to distinguish the particular offense, defined in §24, he was called upon to meet.

The statute defining the offense of which appellant was convicted makes certain acts with reference to intoxicating liquor an offense designated by the Legislature as a "common nuisance," and where, as here, the indictment charges the place of its commission as being within the county in which the grand jury returning the indictment has jurisdiction, it will not be bad for uncertainty. *Meno* v. *State* (1925), 197 Ind. 16, 164 N. E. 93; *Ruede* v. *State* (1928), 200 Ind. 112, 161 N. E. 563.

It is claimed that the indictment, in one count, is bad for duplicity, because it charges appellant with the doing of more than one act, any one of which is an offense. On that point, it will be sufficient to say that appellant's contention cannot be sustained

for the reason that he was charged with one offense, or with doing the acts defined by statute as a "common nuisance." To maintain or to assist in maintaining a place where certain acts forbidden by statute are permitted, any one of which draws the same penalty, may be conjunctively charged in the language of the statute, without violating the duplicity rule pertaining to criminal pleading. *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403; *Cosilito* v. *State* (1926), 197 Ind. 709, 151 N. E. 721; *Meno* v. *State, supra; Lee* v. *State* (1921), 191 Ind. 515, 132 N. E. 582.

It is claimed that §24, *supra*, is unconstitutional and void, because it includes matters not mentioned in the title of the act of which it is a part. This insistence is based upon Art. 4, §19, Indiana Constitution, which provides "Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." Section 24 is part of an act entitled "An Act concerning Intoxicating Liquors." This act, beyond question, embraces but one subject—intoxicating liquors—and anything else included in the act must be matters properly connected with that subject, if they are to have any vitality. Looking to §24, it will be observed that but one offense is defined. It is confined alone to certain prohibited acts relating to intoxicating liquor. It seems to us, there is no escape from the conclusion that the matters covered by §24 are properly connected with the subject expressed in the title of the act. A question analogous to the one we are now considering was directed against §20, ch. 4, Acts 1917 p. 15. By that section, the offense characterized as a "common nuisance" was created. This court held that the subject of the 1917 act was intoxicating liquor, and, although neither the offense nor the things prohibited in §20 were mentioned in the title, still that section comprised matters connected with intoxicating liquors only, and, therefore,

germane to the subject of the act as expressed in the title. Section 24 is not subject to the constitutional objection urged against it. *Baldwin* v. *State* (1923), 194 Ind. 303, 141 N. E. 343; *Alyea* v. *State* (1925), 196 Ind. 364, 147 N. E. 144; *Perrone* v. *State* (1925), 196 Ind. 384, 148 N. E. 412; *Wrench* v. *State* (1926), 198 Ind. 61, 152 N. E. 274.

Causes relied on for a new trial—insufficient evidence; verdict contrary to law; error of the court in giving of its own motion instructions Nos. 3, 5, 6 and 7, and in refusing to give appellant's tendered instructions Nos. 3, 4, 8 and 12, present questions of law requiring a careful consideration of the evidence, not only as to whether it is sufficient to sustain the verdict, but in determining its relevancy to the challenged instructions given, as also to the instructions refused.

Appellant's conviction rests upon circumstantial evidence. Briefly, the evidence shows that, about May 1, 1925, appellant established a camp on land adjacent to what is known as "Spillman's Lake" or Pond, about two miles east of Winslow, Pike County, Indiana. The lake was surrounded by trees, bushes and undergrowth. It was a resort for fishermen and campers. On May 14, in the afternoon, two federal prohibition agents, the sheriff of Pike County, the marshal of Winslow, a policeman of Petersburg, and a citizen of Winslow drafted by the officers, together went to Spillman's Lake, and in going around the lake came upon a camp, consisting of a tent, in size about 12 x 14 feet, a table and other ordinary camp equipment. It was located in the woods between a bluff on the west, and the lake on the east, at a place apparently used before for the same purpose. On the same side of the lake, other points had been so used, and one of them was then so occupied. Appellant, who claimed to be the owner of the camp outfit, his wife, and the wife of another person, with whom he was sharing

the camp, were present. Later, and while the officers were there, the husband of the second lady, and another gentleman came into camp from the lake where they had been fishing. The officers searched the immediate site of the camp, its equipment and a wide range of territory surrounding it.

Nothing whatever in the way of intoxicating liquor, nor anything in any way connected with the manufacture of liquor was found in or about the tent. No witness testified to having drunk, or to having seen any other person drink, intoxicating liquor at appellant's camp; or that he knew of people congregating there for the purpose of drinking such liquor; or that appellant was engaged in, or that he assisted in, the manufacture of intoxicating liquor; or that he had obtained from any source or had in his possession any material or substance, tools, bottles, caps, corks, or equipment ordinarily used or connected with the manufacture of intoxicating liquor. A road or path around the lake passed in close proximity to appellant's camp. Six witnesses, uninterested in the result of the trial, testified that they had fished on the lake at different times during the first two weeks of May, and, on different occasions, they severally had stopped at the camp and talked to appellant, but, at no time did they see any evidence of intoxicating liquor, either in the making or otherwise, nor did any one about the camp say anything to them on that subject.

There was testimony to the effect that there were many paths leading in various directions from the one around the lake into and through the underbrush and woods on the west side of the lake. Two officers testified that there was a path leading from the tent south across a marsh approximately 75 to 120 yards, to a 12-gallon jar full of "home brew in the making," which contents contained, in their opinion, based upon their general knowledge of "home brew," more than one-half

of one per cent of alcohol, and was due to "take off" in a day or two. It also appears from the testimony that an empty gallon jug, which, from its odor, had contained "white-mule whisky," was found about 75 feet east of the tent. Ten or a dozen empty clean bottles and 30 empty dirty bottles, characterized as coca cola, pop and beer, some of them partly covered with leaves, and some of which, in the opinion of two witnesses, had contained "home brew," were found scattered haphazardly in the brush for a distance of from 7 to 125 yards away from the camp.

The court, on its own motion, gave to the jury 21 separately numbered instructions, four of which—3, 5, 6 and 7—appellant asserts are erroneous and were harmful to him. No. 3 undertook to state the material allegations of the indictment, but failed to state the venue as one of them. It directed attention to the offense of maintaining or assisting in maintaining a common nuisance as "charged in the indictment." Instruction No. 1 set out a copy of the indictment, which charged that the offense was committed "in the County of Pike, State of Indiana." There was evidence to the effect that the camp and the jar to which reference was made, were in Pike County, Indiana. While No. 3 is not free from criticism and, standing alone, might be regarded as erroneous, yet when it is considered in connection with No. 1, the omission relied on does not amount to reversible error. *Rahke* v. *State* (1907), 168 Ind. 615, 81 N. E. 584; *Thain* v. *State* (1914), 182 Ind. 345, 106 N. E. 690.

Nos. 5, 6 and 7 were on the same subject and phase of the case. No. 5 told the jury, in substance, that conviction did not depend upon the defendant owning the place where it was alleged the nuisance was maintained, nor was the State bound to prove (No. 6) that defendant owned any part, or all of the premises or equipment, and

(No. 7) "that the offense is made out if it is proven to you beyond a reasonable doubt" that the defendant maintained or assisted in maintaining the place alleged in the indictment, and that intoxicating liquor was being manufactured there.

These instructions and No. 10, with reference to the place, also informed the jury that it was necessary for the evidence to show, beyond a reasonable doubt, that defendant had possession or control of the place and the equipment where people were permitted to congregate and drink intoxicating liquor, and that if he was present and maintained or assisted in maintaining it, the jury would be authorized to find him guilty. Appellant insists that these instructions are erroneous for the reason they do not definitely connect the manufacture or the drinking with the place maintained by him; nor do they include the element of knowledge on the part of the defendant of the alleged violation. Referring to appellant's first objection, it is true these instructions do not confine the place to the tent or the premises which might reasonably be considered the camp site, but they do require the jury to find, as a question of fact, that appellant maintained or assisted in maintaining the place where the acts forbidden by statute were by him done or permitted as charged in the indictment. In a prosecution of this character, it is not necessary to prove that the accused is the owner, lessee or proprietor of the place where the offense is alleged to have occurred, but it is sufficient in that respect to show beyond a reasonable doubt that he was in possession and custody of the equipment and place, then in use for the manufacture of intoxicating liquor. *Durst* v. *State* (1920), 190 Ind. 133, 128 N. E. 920. Looking to appellant's second objection, it is sufficient to say that he was charged directly with the acts defined by statute as constituting the offense.

Hence, an instruction, as here, No. 6, making a conviction depend upon proof as required by law, that the defendant was in possession of the place and present and maintained or assisted in maintaining it, is language, as to knowledge, equivalent to that which appellant contends was necessary to make the instruction good.

Lastly, our attention is called to the instructions tendered by appellant and by the court refused. Of these, No. 12 applied to the testimony of the defendant on cross-examination showing previous convictions. This instruction would have told the jury that they could not consider such evidence except for the purpose of determining the weight and credit to be given the testimony of the witness and could not be used or considered for the purpose of determining the guilt or innocence of the defendant. We see no objection to this instruction. However, the court's instruction No. 12 was on the same subject, but it is subject to criticism and must be disapproved because it contains the statement "that this evidence alone would not justify you in returning a verdict against the defendant." This language was followed by the statement, "but that said evidence can only be used by you in determining what weight, if any, you will give the testimony of the defendant who has previously been convicted." The first statement in this instruction gives the impression that such evidence might be considered by the jury along with other evidence in determining guilt or innocence, which, if standing alone, would make the instruction erroneous (*Pierson* v. *State* [1919], 188 Ind. 239, 123 N. E. 118) but that which follows, plainly limiting and modifying it, persuades us to hold that the jury was not thus lead into error concerning the restricted purpose or use of such testimony.

Nos. 3, 4 and 8 refused pertain to the law relative to the probative value of circumstantial evidence in a

criminal prosecution. The force of circumstantial evidence being exclusive in its character, the test for determining its value for the guidance of trial courts and juries, with respect to the sufficiency of such evidence to warrant a conviction, "is not whether the proof establishes circumstances which are consistent, or which coincide with the hypothesis of the guilt of the accused, but whether the circumstances, satisfactorily established, are of so conclusive a character, and point so surely and unerringly to the guilt of the accused, as to exclude every reasonable hypothesis of his innocence." *Cavender* v. *State* (1890), 126 Ind. 47, 25 N. E. 875; *Wrassman* v. *State* (1921), 191 Ind. 399, 132 N. E. 673; *Thain* v. *State, supra; Dunn* v. *State* (1906), 166 Ind. 694, 78 N. E. 198; *State* v. *Fisk* (1908), 170 Ind. 166, 83 N. E. 995; *Mitchell* v. *State* (1923), 193 Ind. 1, 10, 138 N. E. 507; *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168.

As we have seen, defendant's conviction rests entirely upon circumstantial evidence. It was, therefore, important that the jury be clearly and correctly advised as to the value of such evidence. The court gave to the jury one instruction upon that subject. It is so worded that its legal effect is to leave with the jury the admonition to convict if the circumstances proved coincide with the hypothesis of the guilt of the accused. It gave the jury an erroneous theory of the law as a guide for its consideration of the circumstances submitted to it.

The three instructions tendered by appellant and refused were practically in the language approved by this court in *Cavender* v. *State, supra,* taken from Chief Justice Shaw's instructions to the jury in *Commonwealth* v. *Webster* (1850), 5 Cush. (Mass.) 295, as follows: "If any one fact necessary to the conclusion is wholly inconsistent with the hypothesis of the

guilt of the accused, it breaks the chain of circumstantial evidence upon which the inference depends; and however plausible and apparently conclusive the other circumstances may be, the charge must fall." The defendant was entitled to have the jury advised of this legal principle, and the court's refusal so to do must be regarded as reversible error.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.