STREEVAL *v.* STATE OF INDIANA.

[No. 31047. Filed October 31, 1968. Rehearing denied January 31, 1969.]

*Bob Good,* of Shelbyville, for appellant.

*John J. Dillon,* Attorney General, and *R. Robert Yeager,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Calvin Streeval from convictions, after jury trial, of willfully making a fictitious report of the commission of a crime, Ind. Anno. Stat. § 10-4931 (1956 Repl.), and of violating Ind. Anno. Stat. § 10-3037 (4) which provides:

> "A person commits a crime when . . . (4) he makes a knowingly false or misleading written statement for the purpose of obtaining credit or other property or services."

Following the verdict and entry of judgment thereon, appellant filed his motion for new trial, which contained the following grounds:

> "1. The verdict of the jury is not sustained by sufficient evidence.
>
> 2. The verdict of the jury is contrary to law."

Appellant's sole assignment of error upon this appeal is the overruling of his motion for new trial. Since, in reviewing the sufficiency of the evidence, there is a presumption in favor of the trial court, this court will only consider the evidence most favorable to the appellee, and all reasonable and logical inferences that may be drawn therefrom. *Capps v. State* (1967), 248 Ind. 472, 229 N. E. 2d 794, and cases cited therein. And if, upon considering such evidence, this court finds substantial evidence of probative value from which the jury could have found the defendant guilty of every element of the crime charged beyond a reasonable doubt, the evidence will be held to be sufficient to support the verdict. *Baker v. State* (1956), 236 Ind. 55, 138 N. E. 2d 641. The evidence in this case, viewed most favorably to appellee, the State of Indiana, reveals the following:

On January 29, 1965, one "Poncho" Garrett entered the appellant's service station in Edinburg, Indiana, and perpetrated what appeared to be a very unprofessional armed rob-

bery upon the appellant in the presence of his wife and son and two social acquaintances named Orner. Garrett carried out the alleged robbery using appellant's own gun.

The robber, Garrett, testified for the state that he and Calvin Streeval, the appellant, had planned the robbery several days prior to its occurrence. Garrett testified that he was to receive one hundred fifty dollars ($150) for perpetrating the hold-up, one hundred dollars ($100) at the time of the hold-up, and fifty dollars ($50) when Streeval's insurance company paid off. He also said that he and Streeval discussed the robbery behind the garage on January 29, 1965, while the Orners and Streeval's wife were sitting in the station drinking beer. Streeval told Garrett that he (Streeval) would send his wife to obtain a pistol. Mrs. Streeval departed and returned in a few minutes with the pistol in her handbag. Streeval then picked up the handbag and went into another part of the station, outside the view of his visitors, and gave the gun to Garrett.

The fact that Mrs. Streeval's purse was handled by the defendant and carried by him to another part of the station was corroborated by Christine Orner. Garrett then left the station and returned in a short time to stage the robbery.

The evidence is uncontroverted that Streeval's wife and son and Christine Orner immediately reported the incident to the police.

Soon after the robbery, Garrett was apprehended in the automobile of a friend; one hundred dollars ($100) in cash was found on the floor of the car and the gun used in the hold-up was later found near the location of the car. Garrett was taken to Streeval's station where Streeval identified him as the robber. At this time, Streeval objected that more than one hunded dollars ($100) had been taken.

On February 9, 1965, an adjuster from the Indiana Insurance Company visited Streeval. At that time Streeval dictated a statement to the adjuster, regarding the alleged robbery and

the adjuster transcribed it simultaneously. Streeval then signed the statement, which reads as follows:

"State's Exhibit 6. Edinburg, Indiana, February 9, 1965. My name is Calvin C. Streeval, and I lease a Marathon Service Station located at the corner of U. S. #79 and West Campbell Street in Edinburg, Indiana, from Walter Palmer. Mr. Palmer's address is 400 South Walnut Street, Edinburg, Indiana. My age is 40, and I live with my wife, Peggy, and my six children at 302 South Main Street, in Edinburg, Indiana. On the 29th of January, 1965, about 9:30 P.M. I was getting ready to close the station and my wife, Peggy, my son, John Robert, a friend, Donald Orner, and his wife, Christine Orner, and another friend, William Frank, were all in the station. At this point I went to the light switch and turned the lights off and at that I said, 'Let's all go home.' I then turned around and a man was standing in front of me with a gun pointed at my stomach. The man said then, 'There's nobody going any place. Just open the cash register and give me the bills." I then walked back behind the counter and opened the cash register and gave him between $521.00 and $571.00 in bills of all denominations. He then took the money, opened the door and said, 'Now, call the police.' And, began to run east on Campbell Street toward town. Within a minute or two William Frank ran out the door after the man. I then stepped out the door and told Bill to 'let the police catch him.' My wife, Peggy, my son, John, and Christine Orner went to the police station to report the accident because the telephone at the station. While they were still in the police station, they had radioed back that they had caught the man, Poncho Garrett, who lives on South Pleasant Street in Edinburg, Indiana. The Edinburg City Police brought Garrett back to the station and put $100.00, ten, $10.00 bills, on the counter and said, 'Here's your money.' And, at that time I told the two city police, 'I don't believe that all the money.' So, they picked it back up and counted it and said they would have to hold the money for evidence. They then left and took the man and the money to the station. I have found out since then that the man was Cecil 'Poncho' Garrett, was the man who robbed me. I have heard that Garrett is at the Johnson County Jail in Franklin. I went to Franklin and gave the Prosecutor a statement as to what happened. I looked at the gun when he was robbing me and I was pretty drunk at the time and did not recognize the man at all. However, the man had been in the station four or five

times that evening and at one point he talked to me and wanted to borrow $150.00 which I did not give him. At this time I was not very drunk, but later in the evening I was so drunk that it is a wonder that I could see anything. But, when he robbed us, my wife and the other people did recognize him and told the police the same. Donald and Christine Orner live at Rural Route 2, Edinburg, Indiana. William Frank, age 28, lives with his mother and step-father, Walter Wolfe, at 301 South Grant Street, Edinburg, Indiana. I am making claim against the Indiana Insurance Company on my policy of X33-008-684 in the amount of $538.00 which is the closest amount I can judge was taken by the robber, Cecil Garrett. The policy (strike that) The police say that they found the gun which was a 22 caliber and which turned out to be mine, which had been stolen from the station sometime during the week-end. This man was not a friend because I never spoke to him more than five times in my life. I was awful drunk but my description as he ran across the driveway would be five feet-six to five feet-seven, weight one hundred-ten, clothes, overalls, no hat, dark jacket, white, medium to dark in complexion, light colored hair. We could see him for from 30 to 60 seconds. The Prosecutor said they are going to charge the man with armed robbery. I have a tractor of which I use in the trucking business and at present I am leased to Overland Freight Lines, 2612 West Morris Street, Indianapolis, Indiana. The two days following the robbery my wife, Peggy, called our agency the Shelby Insurance Agency, and the girl in the office said she would tell Tom Harrison that we had been robbed the Friday before and we were making claim against our insurance policy. I have read these four pages of report and to the best of my knowledge, it is completely true and correct. Signed, Calvin C. Streeval."

Appellant never filed a "sworn statement" or "proof of loss," which is required by the insurer and, therefore, his claim was never paid, although the insurer had set up a reserve account on its books when Streeval's claim was filed.

Meanwhile, the alleged robber, Garrett, had been charged with the crime of robbery and, after 90 days in jail, entered a plea of guilty. He had divulged nothing to law enforcement authorities concerning Streeval's collusion with him in perpetrating the hold-up. Thereafter, however, the prosecuting

attorney allowed Garrett to listen to a tape recording of Calvin Streeval accusing Garrett of stealing his pistol and using it to rob him. At this point, Garrett decided he was no longer willing to serve a 10 to 25 year prison sentence in order to collect his $150 stipend from his free and "double-crossing" friend, Calvin Streeval. Garrett then told the authorities that Streeval had arranged the fake hold-up in order to collect on his insurance policy.

Ind. Anno. Stat. § 10-4931 (1956 Repl.) under which appellant was charged in Count I, reads in part as follows:

"Any person who shall willfully make to any peace or police officer of this state, or to any peace or police officer of any county, city, town or other political subdivision of this state, a fictitious report of the commission of any crime, knowing the same to be false, shall be guilty of a misdemeanor . . ."

In view of the summation of the evidence set forth above, it is clear that there is no evidence whatsoever in the record which tends to show that the appellant fictitiously reported a crime to the police. In fact, the state introduced evidence, in the form of a statement by appellant to the adjuster for the Indiana Insurance Company, that appellant's wife and son and Christine Orner reported the incident to the police. Furthermore, the State's first witness, Christine Orner, stated on direct examination that she and appellant's wife reported the hold-up to the police *after Mr. Orner told them to do so*. The state is bound by the testimony of its own witness. As the Supreme Court of Rhode Island stated in *State* v. *McCormick* (1944), 70 R. I. 339, 38 A. 2d 777:

". . . (N)either the state nor the defendant had the duty of calling any particular witness. Each party had the right to present such evidence as it deemed necessary and advisable in accordance with its best judgment, and, having done so, had to stand or fall on the record as made." 38 A. 2d at 780.

Since the State's evidence wholly fails to prove that the appellant made a fictitious report of a crime, and, indeed,

proves that the report was made by someone else, ■ appellants conviction under Count I of the affidavit cannot stand.

As to Count II of the affidavit, however, we believe that the evidence in the record is so substantial and probative as to require an affirmance of appellant's conviction thereunder.

Appellant's signed statement to the adjuster for the Indiana Insurance Company is quoted above, and in it, appellant states that he is making a claim to recover the money ■ he alleges was taken. From this and the evidence presented by the state which demonstrated the circumstances surrounding the hold-up, the jury could reasonably infer that appellant made and signed the statement knowing it to be false, and that he did so in order to obtain property from the Indiana Insurance Company. Therefore, we hold that the evidence is sufficient to support his conviction under Count II of the affidavit for filing a deceptive credit statement. Ind. Anno. Stat. § 10-3037 (4), *supra.*

Appellant's second allegation of error in his motion for new trial is that the verdict of the jury is contrary to law. The specification that the verdict of the jury is "contrary to law,"

". . . means and relates to the law as applied to the facts as shown by the evidence. It means that applying the law to the facts as shown by the evidence there is no basis in law for a verdict of guilty. It is virtually a demurrer to the evidence." *Hamilton* v. *State* (1934), 207 Ind. 97, 104, 190 N. E. 870, 873.

This being the state of the law, it is clear that appellant's motion for new trial is not sufficient to present any allegation of error with regard to the admission of various matters into evidence.

"The office of the motion for a new trial is to present to the trial court alleged errors of law committed in the trial, and only such alleged errors as were thus presented to the trial court can be available on appeal." *Poehler* v. *State* (1924), 194 Ind. 207, 208, 142 N. E. 410.

In *Poehler* v. *State, supra,* it was held that a motion for new trial which alleged that "the finding of the court is contrary to law and not sustained by sufficient evidence" did not allege any error in the exclusion or admission of evidence.

Therefore, the appellant's allegation that the verdict of the jury is contrary to law is sufficient only to raise one other argument. The gravamen of that argument is that since the evidence shows that the Indiana Insurance Company was not misled by any statement which he made, the offense of deceptive practices as defined by § 10-3037, *supra,* has not been committed. In support of this contention, appellant cites the case of *Robinson* v. *State* (1953), 232 Ind. 396, 112 N. E. 2d 861 where a conviction was reversed by this court because the affidavit contained no allegation that the purported victim delivered anything of value by reason of the fraudulent conduct of the defendant.

It is a sufficient answer to appellant's contention to note that *Robinson* v. *State, supra,* was decided under Ind. Anno. Stat. § 10-2103 which contained a requirement of reliance. That statute was repealed by Acts 1963 (Spec. Sess.) ch. 10 § 14. At Section 10 of that same 1963 Act of the Indiana General Assembly, there appears the provision which is now codified as Ind. Anno. Stat. § 10-3037 (4), *supra.*

Ind. Anno. Stat. § 10-3037 (4), *supra,* clearly excludes any requirement that the "knowingly false or misleading written statement" proscribed therein be relied upon by anyone. Under this section, the defined crime is committed when a knowingly false or misleading written statement is made for the purpose of obtaining "credit or other property or services" and the same is tendered to the person or body from whom such property, services or credit is sought. Whether or not the attempt succeeds to any extent whatever is irrelevant, once the attempt is made. Since reliance, or a successful misleading of a victim is not required by the new deceptive practices statute, the appellant's objection to his

conviction due to the absence of proof of this factor is without merit.

For all of the foregoing reasons, appellant's conviction upon Count I of the affidavit in this case should be reversed, and appellant's conviction upon Count II of the affidavit should be affirmed. Therefore, appellant's motion for new trial as to Count I should have been granted, but said motion was properly overruled as to Count II.

Affirmed in part.

Reversed in part.

Lewis, C. J., and Arterburn, J., concur.

Jackson, J., concurs in part and dissents in part with opinion.

DeBruler, J., not participating.

### ON PETITION FOR REHEARING

HUNTER, J.—The appellant has filed a petition for rehearing in this cause and alleges as one ground for rehearing that:

"The majority opinion did not consider the introduction of the evidence of other unrelated crimes through the testimony of the regular presiding judge of the trial court (who did not sit at trial), under the theory that the appellant's motion for a new trial was not sufficient to present any error with regard to the admission of evidence, while the case of *Layton* v. *State* (1966), 248 Ind. 52, 221 N. E. 2d 881, (which clearly holds that one crime cannot be proved in order to establish another) was decided under a motion for a new trial, that is identical to the one in the instant case."

An examination of this court's opinion in *Layton* v. *State,* *supra,* cited by appellant would indeed lead the reader to believe that the motion for new trial in that case was identical to the motion for new trial filed in this case. The opinion in *Layton* states at one point:

"Such motion in pertinent part alleged the two following grounds:
'1. That the verdict of the jury is not sustained by sufficient evidence.
'2. That the verdict of the jury is contrary to law.' "

The opinion then goes on to consider allegations of error going to the introduction of evidence of prior crimes.

However, an examination of the transcript filed with this court in the *Layton* case reveals that the appellant there filed a very extensive motion for new trial, and that among the grounds alleged as causes for a new trial are causes numbered 27, 28 and 29 alleging "error of law occurring at the trial" in the introduction of the evidence of prior crimes. The opinion in Layton is misleading to the extent that it does not make it clear that the error upon which its decision was based was properly raised. Therefore, the case cited by the appellant does not stand for the rule that errors in the introduction of evidence can be raised by a general allegation that the verdict of the jury is contrary to law.

No other ground is alleged in the petition for rehearing that was not considered and disposed of in the original opinion in this case. Therefore, the rehearing should be denied.

Rehearing denied.

Arterburn, J., concurs.

Lewis, C.J., also concurred in this denial on December 23, 1968, prior to the expiration of his term on this court.

Jackson, J., dissents and would grant a rehearing.

### CONCURRING-DISSENTING OPINION

JACKSON, J.—I concur in that portion of the majority opinion reversing the conviction on Count I of the affidavit, and dissent to that portion thereof affirming the conviction on Count II of the affidavit.

The offenses charged were the result of only one activity on the part of the defendant or the occurrence of one event. The practice of filing multiple criminal prosecutions for one offense is as reprehensible as is the practice of some defense counsel in permitting their client to go to trial on a multiplicity of charges rather than requiring the State to elect on which charge it intends to prosecute.

Finally, in the case at bar it appears that the narrative account of the happenings as related to a representative of the insurance company is insufficient to constitute a violation of Ind. Anno. Stat. § 10-3037 (4). The statement here referred to contains the following: "The two days following the robbery my wife, Peggy, called our agency the Shelby Insurance Agency, and the girl in the office said she would tell Tom Harrison that we had been robbed the Friday before and we were making claim against our insurance policy." The statement in this case only expressed an intent, at some time not specified, to file a claim with the insurance company. It did not, as such, constitute the type of statement contemplated by the statute. The statute requires an affirmative act to obtain credit, property or services through the use of a "knowingly false or misleading statement."

The claim against the insurance company, if one there be, was not introduced in evidence, lacking that claim there can be no valid conviction under Count II of the affidavit and the conviction obtained below should be reversed and the cause remanded with instructions to grant appellant's Motion for a New Trial.

NOTE.—Reported in 241 N. E. 2d 255.