MELBA DEAN MADISON *v.* STATE OF INDIANA.

[No. 870S186. Filed May 3, 1971. No petition for rehearing filed.]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, *Robert J. Hayes,* Prosecuting Attorney for Vanderburgh County, for appellee.

HUNTER, J.—This is an appeal from a conviction of voluntary manslaughter. Appellant was charged by indictment with the crime of second degree murder and the cause was

tried before a jury in the Vanderburgh Circuit Court. The verdict of the jury found the appellant guilty of the lesser included offense of voluntary manslaughter and a sentence of from not less than two (2) nor more than twenty-one (21) years in the Indiana Women's Prison was imposed. A motion to correct errors was filed in due course and was overruled. Certain portions of that motion are argued here and shall be considered in the order presented by appellant.

The first allegation of error encompasses two procedural attempts of appellant to challenge the legal propriety of the grand jury indictment. More specifically error is claimed in the trial court's overruling of appellant's motion to dismiss the indictment before trial and her motion in arrest of judgment after trial. As acknowledged by appellant, the legal argument presented by both motions is substantially the same. They therefore will be considered together.

The thrust of the motions was an allegation that the grand jury which brought the indictment was so biased as to prevent it as a matter of law from bringing a proper charge against appellant. Basis of this position is the fact that appellant is caucasian and a member of the grand jury was a negro. This was prejudicial appellant insists because it must be assumed that witnesses appearing before the grand jury testified that in explaining how the crime had occurred appellant had, in language highly vituperative and derisive of the negro race, described the killer of her husband as a negro.

Appellant cites the Fourteenth Amendment to the United States Constitution and Article 1, Sections 12 and 13 of the Indiana Constitution as guaranteeing her a fair trial and general due process of law. Without discussing in detail why an accused is indeed guaranteed a proper criminal proceeding we will concede the point as indeed we must. We find it unnecessary, however, to rule upon the validity of the grand jury presentment.

The question here is one of whether appellant has presented any indication she has been denied an adequate criminal pro-

cedure. Appellant does not inform us how she has been prejudiced by the proceedings of the grand jury body. It is not alleged in what manner the negro grand juror was prejudiced to such a degree as to render the indictment abhorrent to the fundamental concept of fair and proper justice permeating the criminal justice system. An indictment may be brought by a yea vote of five of the six members of a grand jury. Ind. Ann. Stat. § 9-901 (1956 Repl.). Thus, absent undue influence by the negro member of the grand jury over the others, a proper indictment could be brought even without his vote. Improper influence by the negro member over the others is not alleged. It is not even alleged that he voted for the indictment or that if he did so he voted solely out of prejudice and without regard for the facts as presented to the body of which he was a member.

Neither by her motion to dismiss nor her motion in arrest of judgment did appellant specify any act or sign that indicated the grand juror in question was bent upon persecuting appellant in violation of any applicable constitutional guarantees. The only complaint aired was that appellant is caucasian, the juror is negro and witnesses must have testified that appellant had used "extremely profane and uncomplimentary adjectives to describe" the deceased's assailant. The mere fact that this, we will assume, was the case does not support a bare assertion of prejudice. We take judicial notice of the fact that the juror, as are all grand jurors, was sworn to ". . . present no person through malice, hatred or ill-will, . . ." Ind. Ann. Stat. § 9-807 (1956 Repl.), and we will require more than unsupported claims that prejudice exists to find a violation of that oath.

Appellant alleges that she was at the least entitled to a hearing on her respective motions. But, as they were defective as a matter of law in their failure to indicate specific fraud or corruption or demonstrable prejudice, *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, reh. den. 219 Ind. 217, 37 N. E. 2d 537; *Cooper* v. *State* (1889), 120

Ind. 377, 22 N. E. 320, failure to grant a hearing was clearly within the judicial discretion of the trial court, so long as the court ruled thereon.

Appellant next asserts error in the overruling of an objection to the following question directed to the state's witness Jasper L. Marshall:

"Q. I will ask whether or not you had any information from any sources of your investigation whatsoever that there was a negro involved, other than from the defendant?

A. No, sir."

The objection was based on the alleged hearsay and conclusionary nature of the answer called for.

Hearsay may be defined as an out of court statement ■ repeated in court to establish the truth of the matter contained therein. 5 Wigmore (McNaughton Rev.), § 1361.

No out-of-court statement was repeated or sought. The witness was asked the results of his investigation. This he ■ knew of his own knowledge and his answer was offered to show what his knowledge was.

The objection that a conclusion was called for is likewise ill-founded. The question called for a statement of whether or not the witness' investigation revealed the existence of a fact and not whether the fact was true or false. Relating what he knew without stating that there was or was not definitely or even possibly a negro involved does not in the view of this court constitute the rendering of a conclusion.

Appellant's next assignment of error challenges the propriety of the trial court's overruling of an objection to another question. This question was also directed to policeman Marshall by the state, this time on re-direct examination. The colloquy went as follows:

"Q. What type of description was given to you by the defendant of this subject?

Mr. Clouse: Again the defendant objects for the reason it is not proper redirect examination, not having been gone into on cross-examination.

COURT: Overruled.

A. She said it was a tall subject, she didn't get a good look at him, only at his back going out of the door."

The scope and intensity of redirect examination are matters within the validly exercised discretion of the trial court. *Shipman* v. *State* (1962), 243 Ind. 245, 183 N. E. 2d 823, cert. den. 371 U. S. 958, 9 L. Ed. 2d 504. Appellant does not argue an abuse of discretion by the trial court.

Appellant does argue that redirect examination is generally confined to the scope of cross examination. Such was the case here. On cross-examination appellant's counsel questioned the officer about the version of the slaying appellant gave the police. Included was a review of the alleged existence of the negro man and the efforts undertaken to locate him. This we find opened the matter of the description of the man and there was no error in the trial court's ruling.

Appellant's next allegation of error again involves the trial court's failure to sustain objections to a series of questions.

The queries were directed to witness Gene Martin who was called by the state.

The exchange went as follows:

"Q. Do you have with you in particular the arrest and conviction record of Walter Thomas Madison?

Mr. Kiely: If the court please, there is no issue of the character of the decedent in this trial; there is no evidence of self-defense, there is no evidence other than he was eating at the time. We think it is strictly outside the scope.

Mr. Clouse: It is offered for the purpose of showing the quarrelsome nature of the defendant; that he got in fights and was convicted, and that he made many enemies; there were many people who had reason for wanting to do him in, it is offered for that purpose, your honor.

COURT: Objection sustained.

Mr. Clouse: The defendant offers to prove and if the witness were permitted to testify, his answer would be yes."

and later,

"Q. Officer Martin, I will hand you what has been marked for the purpose of identification, defendant's exhibits 1 through 10, inclusive, can you tell me what they are without stating what is on them, just tell me generally what they are?

Mr. Kiely: We renew our objection. This is completely outside the issues here, there is no evidence of self-defense.

COURT: I will sustain the objection.

Mr. Clouse: The defendant offers to prove that if the witness were permitted to testify he would testify that the defendant's exhibits 1 through 10, inclusive, were the criminal record of the deceased, Walter Thomas Madison."

and still later,

"Q. Officer, again I will hand you what has been marked for the purpose of identification, defendant's exhibits 1 through 10, can you tell me if these are true copies of official records of which you have the custody?

Mr. Kiely: Again I am going to object, unless there is some bearing on this case.

COURT: You may answer the question, yes or no. Objection overruled.

A. Yes.

Mr. Clouse: Defendant offers to introduce in evidence defendant's exhibits 1 through 10, inclusive.

COURT: Do you want to renew your objection?

Mr. Kiely: Yes, your Honor, I would like to renew my objection heretofore made.

COURT: OBJECTION SUSTAINED."

Appellant argues the information sought to be introduced tended to show the quarrelsome nature of the deceased, that there may have been enemies with a motive to kill him. Based

upon the record as a whole it is indeed apparent that someone may have wished to end his life. The question before us here however is whether the information excluded at trial was properly ruled inadmissible.

As to appellant's argument that the omitted testimony would bear on the question of self-defense we note that self-defense is not an issue in the case. The evidence, which is discussed in more detail below, indicated the deceased was seated in his kitchen eating at the time of his slaying. In fact, partially masticated food was present in his mouth when he was found. There was no sign of a struggle. No weapon was found other than that which caused the death. In the case upon which appellant relies to bottom his assertion that the evidence should have been admitted, *McKee* v. *State* (1926), 198 Ind. 590, 154 N. E. 372, the defendant had set up a claim of self defense.

> "As a general rule, the character of the deceased is not in issue in a trial for homicide, and evidence to show his general reputation as a dangerous and violent man is inadmissable." *Osborn* v. *State* (1905), 164 Ind. 262 at 272, 73 N. E. 601, at 604.

An exception to the general rule is the existence of the issue of self defense.

> "There ought, of course, to be some other appreciable evidence of the deceased's aggression, . . ." 1 Wigmore (McNaughton Rev.) § 63 at 469.

before such testimony is relevant and admissible. There being none here it was properly excluded.

Appellant's next objection concerns the court's tenth instruction to the jury. The allegation is that it improperly defined malice in law. Since, as the state points out, appellant was convicted of voluntary manslaughter defined by statute as the voluntary killing of any human being "without malice" Ind. Ann. Stat. § 10-3405 (1970 Supp.) the issue of any prejudice arising from the defining of malice

seems irrelevant. At least appellant has not indicated how any prejudice could have resulted. Under the facts here giving the instruction did not constitute error. *In Re Sobieski* (1965), 246 Ind. 222, 204 N. E. 2d 353.

The final argument presented by appellant relates to the sufficiency of the evidence forming the basis of her conviction. It is claimed that the evidence is not sufficient to support the verdict. We shall review it.

When sufficiency of the evidence is raised in a criminal matter this court considers only that most favorable to the state and all reasonable inferences to be drawn therefrom. *Douglas* v. *State* (1970), 254 Ind. 517, 261 N. E. 2d 567; *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818.

We will not weigh the evidence, nor determine the credibility of witnesses, and will review the record only to determine if as a matter of law there is sufficient evidence of probative value to support the conviction. *Stuck* v. *State* (1970), 255 Ind. 350, 264 N. E. 2d 611.

The evidence most favorable to the state shows that appellant and the deceased were married and resided together. On being summoned to their residence on November 25, 1969, the Evansville Fire Department found appellant and the body of her husband in their home. Appellant was in a bedroom. The deceased was in the kitchen seated at a table, food on a plate before him. In a third, adjacent, room was found the pistol which had fired the fatal missile. Appellant in one of her versions of the incident admitted she had put the gun there.

Appellant voluntarily gave several versions, most oral but one written, of events that had transpired. Two main themes become evident, either her husband had committed suicide or he had been killed by an unknown negro dressed in various clothing.

No other evidence was produced to indicate the presence or involvement of any third party in the shooting.

Appellant and the deceased, it was revealed by testimony

of the deceased's relatives, had been drinking on the evening in question and had had "words".

At the autopsy it was determined that a bullet wound to the head caused appellant's husband's demise. The examination also revealed the presence of food in his mouth.

We find sufficient evidence here as a matter of law from which a jury could reasonably infer guilt beyond a reasonable doubt. *Hardin* v. *State* (1970), 254 Ind. 56, 257 N. E. 2d 671.

Appellant objects more specifically in regard to the evidence that it was composed in large measure of reports of what she had said regarding the events of the night in question. Since much of such testimony related exculpating statements by appellant it is alleged that the state, which introduced it, should be bound by the contents of the testimony. Appellant cites *Pollard* v. *State* (1950), 229 Ind. 62, 94 N. E. 2d 912 to support her position.

But as is stated in that case in regard to exculpating language in a statement:

"It is enough that its falsity appears to the satisfaction of the jury beyond a reasonable doubt, from any or all the facts before the jury." 229 Ind. at 68, 94 N. E. 2d at 914.

Clearly, the jury was satisfied that appellant's various versions of the affair did not represent what had in fact occurred.

Also raised as authority for appellant's position is *Streeval* v. *State* (1968), 251 Ind. 349, 241 N. E. 2d 255. In that case we ruled the state was "bound by its evidence" where there was no evidence that the defendant had made a false report of a crime and a state's witness had testified that *she* had made the false report.

This holding means, appellant alleges, that the state must fail in its case because its witnesses related statements made by appellant tending to exonerate her from blame. But, appellant misconstrues *Streeval*. We there held the state bound to its own witness' testimony in a context where there was *no* evidence the defendant had committed a

crime. Of course a litigant is always bound by the case he presents. In *Streeval* as here that case is broader than the testimony of any one witness. The totality of the state's evidence could reasonably support the jury's finding of guilt. *Hardin* v. *State, supra.*

For all the foregoing reasons the judgment in the court below is affirmed.

Judgment affirmed.

Arterburn, C.J. and Givan, J., concur; Prentice, J., dissents with opinion in which DeBruler, J., concurs.

DISSENTING OPINION

PRENTICE, J.—I am unable to concur in the majority opinion and dissent thereto, for the reason that the evidence presented to the trial court was grossly insufficient to sustain appellant's conviction. This Court has stated on numerous occasions that neither a mere suspicion of guilt nor a mere opportunity to commit the crime charged is sufficient to sustain a conviction. In *Thomas* v. *State* (1958), 238 Ind. 658, 154 N. E. 2d 503, this Court stated:

"Mere suspicion of guilt is not sufficient to sustain a conviction, nor is mere opportunity or the bare possibility of an opportunity to commit a crime sufficient. There must be substantial evidence of probative value presented in a criminal trial before a conviction can be sustained. A mere scintilla of evidence is not enough. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *Robertson* v. *State* (1952), 231 Ind. 368, 108 N. E. 2d 711; *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265 . . ."

Likewise, in *Durham* v. *State* (1968), 250 Ind. 555, 238 N. E. 2d 9, this Court stated:

"Moreover, the proof of a mere opportunity to commit the crime, without more, is not sufficient to sustain a conviction. *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223. . . . A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation or unreasonable inferences of guilt gleaned from the vague evidence surrounding the cause of (the decedent's) death cannot be upheld and must be re-

versed. *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874."

The *only* evidence presented to the trial court which would, in any manner, tend to prove appellant's guilt was that she was in the house with the decedent immediately prior to and at the time of his death, the pistol which had fired the fatal missile was found in a room adjacent to where the decedent's body was found, the decedent and the appellant had "had words" at some point in the evening prior to the incident in question, and that the appellant had made certain conflicting statements, immediately after the death of her husband, to investigating officers. At best, such evidence was wholly circumstantial, and this Court, in *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671, has previously stated:

> "When the evidence before the jury is entirely circumstantial, as in the case before us, certain rules have been established for the jury's guidance. It is not enough that *the circumstances* be consistent with the hypothesis of guilt. They *must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. Heacock* v. *State* (1930), 202 Ind. 344, 353, and cases cited, 174 N. E. 283. . . . It must be such that the trier of the facts may reasonably and naturally infer to a moral certainty the existence of the fact sought to be proved. \* \* \*." (Emphasis supplied)

See also *Manlove* v. *State, supra,* and *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6.

The mere fact that the appellant was found in the house at the same time that the decedent's body was discovered would hardly be a substantial basis upon which to ground a conviction for voluntary manslaughter. The parties were husband and wife; each were, simply, in a place where they would normally be expected to be. Likewise, mere evidence of a domestic squabble or disagreement between the decedent and the appellant at some point during the course of the evening preceding the decedent's death could hardly support, with reasonable cer-

tainty, the inference that the appellant, in fact, voluntarily caused the death of her husband.

The crux, then, of the State's case against the appellant seems to rest upon those statements made by her immediately following the discovery of her husband's corpse. Said statements were purely exculpatory in nature, and at no time following the death of her husband did the appellant admit, or in any manner suggest, that she was guilty of voluntarily killing him. The appellant, when questioned by those fire department and police officers who investigated the incident, stated primarily that "some negro had shot her husband". (Tr. p. 99). She repeated essentially the same statement on numerous occasions.

On November 25, 1969, the appellant voluntarily gave a statement of Officer Jasper Marshall at the Evansville Police Department. Again she stated:

"I heard a shot, and when i (sic) came out of the closet He, the colored man, came running through the bedroom and I ran out almost behind and he went out the front . . . I picked it (the phone) up and started back toward the kitchen and I called the Police Department and said 'My husband has been shot.'"

The conflicting evidence with respect to the incident in question, referred to in the majority opinion, appears further on in appellant's wirtten statement, as follows:

"Q. Did you shoot him?
A. No, I never shot him.
Q. Did he kill himself?
A. Why did he shoot himself?
(At this point Mrs. Madison broke down crying)
I took the gun off the kitchen table and threw it in the living room.
Q. Where were you when he shot himself?
A. Looking in the closet.
Q. Was the gun still in his hand?
A. Yes, I took it out."

(Tr. p. 189)

The following testimony of Officer Jasper Marshall, on direct examination, is also significient in this regard:

"Q. Now, did you talk to her at any time, or was anything said after this statement, this typewritten statement, was completed?

A. Yes, sir.

Q. And when was that?

A. She made a statement right after she signed it, she sat there for a while, and then she said, no, he didn't shoot himself, that damned negro shot him."

(Tr. p. 192)

The appellant was visibly shaken by the circumstances surrounding the death of her husband. She was hysterical and incoherent when the investigating officers arrived at the scene. Thereafter, she was prone to much crying, sobbing, and occasional screaming. Ruby Madison testified that when she visited the appellant during the latter's incarceration, "(s)he was shook up and tore up so bad you couldn't talk to her hardly." (Tr. p. 171). When death makes an unexpected call within the family circle, how many times do we hear some surviving member make statements which, in substance, are confusing, conflicting, and totally irrational.

The statement in the majority opinion that "Clearly, the jury was satisfied that appellant's various versions of the affair did not represent what had in fact occurred," is devoid of meaning. If the jury did not believe the appellant's account of the events surrounding the death of her husband, then she was entitled to an acquittal for there was no other evidence of probative value in the record which would, in any manner, support an inference of guilt. With respect to exculpatory statements made by an accused, the Supreme Court of North Carolina, in the case of *State* v. *Carter* (1961), 254 N. C. 475, 119 S. E. 2d 461, has stated:

"When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements . . .

And when the State's evidence and that of the defendant is to the same effect, and tend only to exculpate the defendant, his motion for judgment as of nonsuit should be allowed . . .

While the State by offering this evidence was not precluded from showing that the facts were different, no such evidence was offered, and the State's case was made to rest entirely on the statements of the defendant, which the State presented as worthy of belief."

See also *Pollard* v. *State* (1950), 229 Ind. 62, 94 N. E. 2d 912.

The judgment of the trial court should be reversed and this cause remanded with instructions to grant the appellant's motion for new trial.

DeBruler, J., concurs.

NOTE.—Reported in 269 N. E. 2d 164.