Paul SPARKS, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 685S241.

Supreme Court of Indiana.

Nov. 6, 1986.

Larry A. Landis, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

In 1978, a jury found petitioner Paul Sparks guilty of murder, a felony, Ind.Code § 35-13-4-1 (Burns 1975). He was sentenced to forty-five years in prison. He appealed, and this Court affirmed his conviction. *Sparks v. State* (1979), 271 Ind. 419, 393 N.E.2d 151. Sparks subsequently challenged his conviction in a petition for post-conviction relief. He now appeals the trial court's denial of his petition, raising the following three issues:

1) Whether he received effective assistance of counsel at trial and on appeal;

2) Whether an allegedly defective grand jury indictment constituted fundamental error, and

3) Whether the post-conviction court's findings of fact and conclusions of law are sufficient.

■ As petitioner, Sparks had the burden of proving the allegations of his petition by a preponderance of the evidence. We review his case as an appeal from a negative judgment. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. Its decision will be reversed only when the evidence is without conflict and leads to a contrary conclusion. *Young v. State* (1984), Ind., 470 N.E.2d 70.

*I. Effective Assistance of Counsel*

Sparks alleges several acts or ommissions which rendered the assistance of his trial counsel ineffective. Specifically, he argues that his trial attorney was ineffective for failing to challenge an allegedly defective grand jury indictment, failing to request a continuance when the State disclosed a surprise statement given by a witness, presenting a damaging defense witness without interviewing that witness prior to trial, and failing to give a closing argument. He also charges that his appellate counsel was ineffective for failing to raise on appeal the defectiveness of the indictment.

■ Sparks must overcome a strong presumption that his counsel was competent. To prevail on a claim of ineffective assistance, he must show that counsel's actions fell below reasonable professional standards and that this deficiency resulted in such prejudice that the reliability and fairness of the proceeding was undermined. Tactical or strategic decisions will not support a claim of ineffective assistance. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315.

## A. Allegedly Defective Indictment

Appellant claims that the indictment returned by the grand jury was defective because one of the grand jurors was an emergency medical technician who attended the victim at the crime scene. Sparks appears to claim, though he does not say so explicitly, that the attorney who represented him at trial and on appeal should have moved to dismiss the indictment on the grounds that one of the grand jurors was subject to challenge under Ind.Code § 35–1–15–11 (Burns 1975).

In his verified petition, Sparks cites the following colloquy from the grand jury testimony:

Prosecutor Surface: Any other questions?

Grand Juror: I don't have a question, I've got more of a statement. You've indicated that—well, it was earlier, too, that one of the rounds entered the cheek?

Sgt. Andrews: Right.

Grand Juror: And there was no mention of anybody noticing the wound and you said they couldn't help but notice it.

Sgt. Andrews: I said it was very obvious.

Grand Juror: Well, now when I was on the scene, see, I was one of the technicians that took him in, we did not treat any wound here. The entire area was covered with blood and we couldn't find any wound down here. So it's very possible that the brain matter that had come through the shot that entered around the eyebrow, the orbit, could have been in such a way that nobody else would have noticed the wound until it had been cleaned off.

Sgt. Andrews: Well, this isn't what she—this isn't what was stated to us by Jeannie Gregory and by Shirley Powell. Okay, at the time that you arrived, he had been—if you arrived, I wasn't there, I'm assuming you arrived—at the time you arrived, he would have laid there for how long?

Grand Juror: Approximately four or five minutes.

Sgt. Andrews: Okay, that's four or five minutes for blood to pour out of the wound between the eyes and on the cheek. At the time that they saw him, it was maybe thirty seconds.

Grand Juror: I remember there was one statement indicating that they—I think Shirley Powell—didn't remember any blood at all around that area.

Sgt. Andrews: That's right. That's our contention. She's not saying that there was blood on the side of his face. She's saying that she didn't see anything on the side of his face. She's not saying she didn't see a wound, she saw blood, or that blood could have covered the wound, she's saying that there wasn't anything there when she saw him.

Prosecutor Surface: Any other questions?

Sparks also submitted a list of grand jurors, showing Steven W. Duckett as juror number three, and now refers us to the State's witness list at trial, which shows an ambulance driver named Duckett as a prospective witness. Though Duckett did not testify at trial, Ron Stevens, another emergency medical technician present at the crime scene, did testify and mentioned his partner, Duckett. Though the connection is not conclusive, for the purposes of this argument, we accept Sparks' contention that a grand juror in this case was also an emergency medical technician at the crime scene.

Appellant argues that Duckett's role as both a witness and a grand juror rendered the indictment defective because the juror was subject to challenge pursuant to Ind. Code § 35–1–15–11 (Burns 1975), which provides in pertinent part:

An individual held to answer a charge for an offense may challenge any individual grand juror, before the jury is sworn, for one [1] or more of the following causes only:

. . . . .

(6) That he is a witness on the part of the prosecution.

Sparks' claim that counsel could have moved to dismiss the indictment under authority of this statute is something of a leap of faith. Generally, a defendant who fails to challenge a grand juror before the grand jury is sworn is deemed to have waived his right to challenge. *McFarland v. State* (1978), 269 Ind. 385, 381 N.E.2d 85; *Sisk v. State* (1953), 232 Ind. 214, 110 N.E.2d 627, *cert. denied*, 346 U.S. 838, 74 S.Ct. 60, 98 L.Ed. 360.

■ A motion to dismiss, previously a motion to quash, is proper when the grand jury proceeding is defective. Ind.Code § 35–3.1–1–4(a)(3) (Burns 1975).[1] A grand jury proceeding is defective when the grand jury was illegally constituted or when any other grounds exist which would have been cause for the abatement of the action. Ind.Code § 35–3.1–1–7 (Burns 1975). Freedom from personal bias is not a legal qualification for a grand juror. Ind. Code 33–4–5–7 (Burns 1975). Therefore the presence of such a member does not render the grand jury illegally constituted and does not subject the indictment to a motion to dismiss. *Jones v. State* (1979), 270 Ind. 285, 385 N.E.2d 426; *Stevens v. State* (1976), 265 Ind. 396, 354 N.E.2d 727.

■ Aside from this statutory claim, Sparks asserts that counsel's failure to challenge the indictment denied him "due process of law as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 12 and 13 of the Indiana Constitution." He does not cite any case authority for either of these propositions, nor is it clear whether he means to invoke the Sixth Amendment right to trial by an impartial jury or the due process of law guaranteed by the Fifth Amendment. Regardless, either federal claim must fail. A grand jury is not a trial body or the ultimate trier of fact. *King v. State* (1957), 236 Ind. 171, 139 N.E.2d 547. Thus, Sparks' Sixth Amendment right to a fair trial by an impartial

petit jury was not prejudiced by the allegedly defective indictment.

■ Whether a federal Fifth Amendment right to due process attaches to a state grand jury proceeding is open to considerable doubt. The United States Supreme Court has declined to decide whether due process would require a state to impanel an unbiased body once it resorted to a grand jury procedure, noting that the grand jury procedure itself is not required by due process. *Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). It has also been noted that "the problem of conflicts of interest [on grand jury panels] is one of state law rather than constitutional law." *Quadra v. Superior Court of City and County of San Francisco*, 403 F.Supp. 486, 489 n. 3, (N.D.Cal.1975). Even if the Fifth Amendment requires an unbiased grand jury, it cannot be said that the grand juror in question was biased.

■ The due course of law provisions in Article I, Section 12 of the Indiana Constitution are violated when the proceedings of the grand jury "render the indictment abhorrent to the fundamental concept of fair and proper justice." *Madison v. State* (1971), 256 Ind. 353, 357, 269 N.E.2d 164, 166. Even if Duckett's statement to the grand jury can be characterized as an irregularity in the proceedings, dismissal is proper only when the irregularity amounts to corruption. *Holland v. State* (1976), 265 Ind. 216, 352 N.E.2d 752. There is no evidence that the prosecution planned or otherwise participated in Duckett's selection as a juror in an attempt to influence the grand jury's decision. Rather, his presence on the grand jury seems to be coincidental. A motion to dismiss based on this alleged irregularity would not be successful. Section 13 of our Bill of Rights guarantees an accused a public trial before an impartial jury. It does not contain any guarantees applicable to grand juries. A grand jury proceeding is not a trial. *Ad-*

1. Ind.Code 35–3.1–1 et seq. has since been repealed and recodified by Ind.Code § 35–34–1–1 et seq., effective September 1, 1982.

*ams v. State* (1938), 214 Ind. 603, 17 N.E.2d 84.

■ Inasmuch as a motion to dismiss would not have been successful, Sparks' has not established that he was prejudiced by the failure of counsel to seek dismissal. Counsel was not ineffective for failing to pursue an unsuccessful strategy.

## B. Surprise Witness Statement

Following opening arguments on the Monday morning of trial, the State disclosed a statement given the preceding Friday by witness James Burke. Defense counsel's motion to exclude Burke's testimony was denied. When Sparks raised the trial court's failure to exclude Burke's testimony on appeal, this Court found, "it cannot be said that the State acted in bad faith or misled the defense. Appellant should therefore have moved for a continuance if he felt more time was needed to examine the statement." *Sparks*, 393 N.E.2d at 153. Noting that counsel had a full and fair opportunity to cross examine the witness, the Court held that it was not error to allow Burke's testimony.

■ Sparks now charges that his attorney was ineffective for failing to request a continuance prior to Burke's testimony. At the post-conviction hearing, trial counsel indicated that he had some previous indication that Burke was going to testify, but that he thought the State deliberately intended to mislead the defendant by failing to produce Burke's statement. He moved to exclude Burke's testimony on this basis, rather than requesting a continuance. This may well have been a strategic move to eliminate the State's most damaging witness. The fact that counsel's strategy failed and this Court's found on review that a lesser remedy was available does not reduce such a tactical decision to the level of ineffective assistance.

## C. Failure to Interview Defense Witness

At trial, Sparks presented the testimony of David Sparks, who had pled guilty to the instant homicide. David testified that he alone had fired the shots that killed the victim, and that Paul had not fired at the victim. However, David also testified that Paul had urged him to shoot the victim a second time.

■ Appellant now alleges that this damaging evidence was a result of counsel's failure to interview the witness. Whether counsel failed to interview David Sparks was the subject of conflicting testimony at the post-conviction hearing. While David testified that counsel did not talk to him prior to trial, counsel testified that "we talked to David and had an idea of what he would testify to." Moreover, counsel testified that, regardless of the damaging testimony given by David Sparks, his exculpatory testimony was still necessary to defendant's case.

Deciding whether to call a witness is a matter of strategy *Stanley*, 479 N.E.2d 1315. Counsel was familiar with the testimony to be offered by David Sparks and could have weighed the exculpatory evidence gained against the inculpatory statement which would come with it. Appellant had approved and in fact insisted upon calling this witness. Counsel's decision to present the witness was not unreasonable.

## D. Failure to Give Final Argument

■ Finally, Sparks argues that his counsel was ineffective for failing to make a final argument. Counsel's testimony at the post-conviction hearing indicated that, though he did not recall the specific circumstances in this case, he sometimes waived closing statements to prevent further rebuttal by the State, to emphasize the weakness of the State's case, or for other strategic reasons. Waiver of opening statements may reasonably be based on tactical considerations. *Bevill v. State* (1985), Ind., 472 N.E.2d 1247. Waiver of closing statements may similarly be a tactical decision.

Noting that counsel could not cite specific reasons for his decision in this case, appellant argues that "the failure to explain the reason for the decision should create a presumption that the act or ommission was unreasonable." Such a presump-

tion, he maintains, "would discourage what could become an epidemic of memory loss by trial counsel." We reject such a presumption and the rationale it implies. We recognize that most criminal defense attorneys, many of whom serve as public defenders, carry a large case load. Under these circumstances, it is not unbelievable or incredible that counsel could not recall details from a case six years later. Moreover, we are confident that an attorney testifying under oath does so to the best of his knowledge and recollection.

Counsel's decisions in this case were strategic choices based on professional judgment. Appellant has not shown prejudice which would render the result of his trial unreliable. We therefore conclude that the trial court correctly found that Sparks received effective assistance of counsel.

### II. Fundamental Error

Sparks also invites our attention to the allegedly defective jury indictment by labeling it as fundamental error. Fundamental error is error so grave that, if not rectified, it would result in a denial of fundamental due process. *Warriner v. State* (1982), Ind., 435 N.E.2d 562. We have concluded that the challenged indictment does not support a claim of ineffective assistance of counsel. Underlying this conclusion is the finding that any irregularity in the indictment did not render the result of Spark's trial unreliable. It therefore follows that proceeding on the indictment did not result in a denial of fundamental due process.

### III. Findings of Fact and Conclusions of Law

 Appellant charged that the post-conviction court failed to state its findings of fact and conclusions of law with sufficient specificity. Though the court's statement is brief and somewhat conclusory, we find any error to be harmless. Even where findings of fact and conclusions of law are inadequate, if the claims presented by defendant are not claims which would entitle him to relief, the inadequacies are harm-

less. *Berry v. State* (1985), Ind., 483 N.E.2d 1369.

The judgment of the post-conviction court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.